UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEBASTO THERMO & COMFORT
NORTH AMERICA, INC. and
WEBASTO-EDSCHA CABRIO USA, INC.,

          Plaintiffs,          Case No. 16-cv-13456

                                      Paul D. Borman
v.                                        United States District Judge

BESTOP, INC.,

          Defendant.
_____/

OPINION AND ORDER GRANTING PLAINTIFFS' PARTIAL MOTION
TO DISMISS BESTOP'S FIRST AMENDED COUNTERCLAIM AND
TO STRIKE BESTOP'S SEVENTH AFFIRMATIVE DEFENSE (ECF NO. 46)

      This action involves Plaintiffs Webasto Thermo & Comfort North America, Inc. and Webasto-Edscha Cabrio USA, Inc.'s (collectively "Webasto") claim that Defendant Bestop, Inc. ("BesTop") infringes Webasto's U.S. Patent No. 9,346,342 ("the '342 Patent"), entitled "Vehicle Roof and Roof Opening Mechanism." BesTop asserts that the claims of the '342 Patent were disclosed in prior art and are therefore unpatentable. BesTop has filed its First Amended Counterclaim, adding a claim of inequitable conduct and an affirmative defense of unclean hands based on that same alleged inequitable conduct. Webasto now moves to dismiss the inequitable conduct

1

claim under Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 9(b), and to strike the unclean hands affirmative defense pursuant to Fed. R. Civ. P. 12(f). The Court concludes that a hearing is not necessary to resolve the issues raised in Webasto's motion and will determine the matter on the parties' written submissions. E.D. Mich. L.R. 7.1(f)(2).

## I. BACKGROUND

Webasto alleges that on May 24, 2016, the United States Patent and Trademark Office ("USPTO") issued the '342 Patent and that Webasto holds all right, title and interest in the '342 Patent with rights to enforce the '342 Patent and to sue for infringement. (ECF No. 1, Complaint ¶ 8; Ex. A, U.S. Patent No. 9,346,342.) The '342 Patent claims technology related to a vehicle roof and roof opening mechanism that Webasto claims to have introduced to the public on March 27, 2015, at the Easter Jeep Safari event in Moab, Utah. (Compl. ¶ 10-11.) Webasto alleges that the Webasto roof opening mechanism provides an innovative and effective way to cover and selectively uncover a roof opening. (Compl. ¶ 12.)

Webasto alleges that BesTop manufactures a roof opening mechanism under the name "Sunrider For Hardtop" ("Sunrider") that incorporates Webasto's patented roof opening mechanism and infringes one or more claims of the '342 Patent, either literally or under the doctrine of equivalents. Webasto alleges that representatives of BesTop were present at the 2015 Moab, Utah Jeep event and that, at that time, BesTop

2

did not offer a roof opening mechanism similar to or in-line with its current Sunrider. (Compl. ¶¶ 13-18.)

Webasto alleges that BesTop's Sunrider infringes at least claims 1 and 6 of the '342 Patent. (Compl. ¶ 25.) Claim 6 of the '342 Patent recites:

> A roof opening mechanism, being designed as an interchangeable insert, for unlockable fixation at a roof structure of a vehicle roof, and comprising:
>
> > a base frame, which can be placed upon an edge region of the roof structure, said edge region for limiting a roof opening, further comprising a fabric covering element, which, by at least one tensioning bow fixedly pivotable with respect to the base frame, is displaceable between a closed position for covering the roof opening and an uncovering position for uncovering the roof opening,
> >
> > wherein the tensioning bow is coupled to an auxiliary tensioning bow fixedly pivotal to the base frame, and
> >
> > wherein the tensioning bow, in relation to a vertical longitudinal center plane of the roof, is on each of its two sides connected to the auxiliary tensioning bow via a coupling rod,
> >
> > the coupling rod being articulated to the auxiliary tensioning bow and to the main tensioning bow via intermediately positioned hinge points.

(Compl. ¶ 26, Ex. A, United States Patent No. 9,346,342, claim 6, PgID 38.) Webasto alleges that BesTop's Sunrider mechanism satisfies all of the limitations of claim 6 of the '342 Patent. (Compl. ¶¶ 27-33.)

3

Claim 1 of the '342 Patent recites "A vehicle roof having a roof structure with a roof opening, which, by a roof opening mechanism, can be closed or at least partially uncovered as desired, said roof opening mechanism being designed as an interchangeable insert. . . ." (Compl. ¶ 34. Ex. A, '342 Patent, claim 1, PgID 37.) Claim 1 then recites the structural elements of the interchangeable insert which are similar to those set forth connection with claim 6. (*Id*.) Webasto alleges that each of the limitations of claim 1 of the '342 Patent are found in BesTop's Sunrider mechanism. (Compl. ¶ 35.)

Webasto alleges that BesTop adopted the Webasto patented design after having seen Webasto's design in at least March 2015 and was or should have been aware that Webasto's design incorporated patentable subject matter. Webasto alleges that BesTop's infringement has caused and continues to cause damage to Webasto and that Webasto is entitled to recover damages at trial, including treble damages, pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285. (Compl. ¶¶ 42-43.)

This Court previously granted Webasto's motion to dismiss BesTop's original counterclaim in its entirety for failure to meet the pleading requirements of Fed. R. Civ. P. 12(b)(6). *Webasto Thermo & Comfort North America, Inc.*, No. 16-13456, 2017 WL 4535290 (E.D. Mich. Oct. 11, 2017). The Court also granted BesTop leave to file an amended counterclaim, which BesTop did on October 25, 2017. (ECF No.

4

42, Amended Answer and First Amended Counterclaim.) Webasto now moves for partial dismissal of BesTop's First Amended Counterclaim, specifically for dismissal of BesTop's Inequitable Conduct Counterclaim (Count III), and moves to strike BesTop's Seventh Affirmative Defense. For the reasons that follow the Court GRANTS the motion, DISMISSES Count III of BesTop's First Amended Counterclaim, and STRIKES BesTop's Seventh Affirmative Defense (Unclean Hands), which expressly incorporates Count III of its Counterclaim.

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 539 (internal quotation marks and citations omitted). *See also Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) ("Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.").

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id.* at 555 (internal quotation marks and citations omitted) (alteration in original). "To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

The Supreme Court clarified the concept of "plausibilty" in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), explaining that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678." Thus, "[t]o survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible. Bare assertions of legal liability absent some corresponding facts are insufficient to state a claim." *Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims, (2) matters of which a court may take judicial notice (3) documents that are a matter of public record, and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (Internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. . . . [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.").

The *Twombly/Iqbal* pleading standard applies in the case of a Rule 12(b)(6) challenge in a patent case. *Webasto*, 2017 WL 4535290, at *4-5 ("courts have almost unanimously held that all patent claims and counterclaims are subject to the pleading requirements of *Iqbal* and *Twombly*") (internal quotation marks and citation omitted).

In addition, the heightened pleading requirements of Fed. R. Civ. P. 9(b) apply to claims of inequitable conduct. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) ("[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b).").

### III. ANALYSIS

The question presented in Webasto's motion is whether BesTop has pleaded inequitable conduct with the specificity required by Rule 9(b) and whether the allegations of Count III state a plausible claim of inequitable conduct under Rule 12(b)(6). The Federal Circuit has taken aim at what it has labeled a gross misuse and overuse of the inequitable conduct claim in patent actions, stemming in large part from the Federal Circuit's own relaxation of the standards for a showing of the intent and materiality elements of the claim:

> This court embraced [] reduced standards for intent and materiality to foster full disclosure to the PTO. This new focus on encouraging disclosure has had numerous unforeseen and unintended consequences. Most prominently, inequitable conduct has become a significant litigation strategy. A charge of inequitable conduct conveniently expands discovery into corporate practices before patent filing and disqualifies the prosecuting attorney from the patentee's litigation team. Moreover, inequitable conduct charges cast a dark cloud over the patent's validity and paint the patentee as a bad actor. Because the doctrine focuses on the moral turpitude of the patentee with ruinous consequences for the reputation of his patent attorney, it discourages settlement and deflects attention from the merits of validity and infringement issues.

8

* * *

> With these far-reaching consequences, it is no wonder that charging inequitable conduct has become a common litigation tactic. One study estimated that eighty percent of patent infringement cases included allegations of inequitable conduct. Inequitable conduct has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system. [T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps.

*Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011) (internal quotation marks and citations omitted). In response to this unintended consequence, the Federal Circuit has "tighten[ed] the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290. The Federal Circuit has enunciated the following new standard:

> To prevail on a claim of inequitable conduct, the accused infringer must prove that the patentee acted with the specific intent to deceive the PTO. A finding that the misrepresentation or omission amounts to gross negligence or negligence under a "should have known" standard does not satisfy this intent requirement. In a case involving nondisclosure of information, clear and convincing evidence must show that the applicant made a deliberate decision to withhold a known material reference. In other words, the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it.

649 F.3d at 1290 (internal quotation marks and citations omitted).

9

Webasto argues that BesTop has failed to allege a *prima facie* case of inequitable conduct and seeks dismissal of Count III of BesTop's First Amended Counterclaim alleging Unenforceability of the '342 Patent. The Federal Circuit "applies [its] own law, not the law of the regional circuit, to the question of whether inequitable conduct has been pleaded with particularity under Rule 9(b)." *Exergen*, 575 F.3d at 1326. "'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)." *Id.* at 1326 (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys. LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Federal Circuit has expressly held that "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. Rule 9(b) standards for pleading state of mind also apply in the patent context:

> Rule 9(b) also states that "[m]alice, intent, knowledge, and other conditions of mind of a person may be averred generally." The relevant "conditions of mind" for inequitable conduct include: (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO. Although "knowledge" and "intent" may be averred generally, our precedent, like that of several regional circuits, requires that the pleadings allege

> sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind.

575 F.3d at 1327 (internal quotation marks, citations, and footnote omitted). The Federal Circuit summarized the inequitable pleading requirements as follows:

> In sum, to plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

575 F.3d at 1328-29 (footnote omitted).

"The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327 n. 3. "A pleading that simply avers the substantive elements of inequitable conduct, without setting forth the particularized factual bases for the allegation, does not satisfy Rule 9(b)." *Id*. at 1326-27.

## A. BesTop Fails to Sufficiently Plead the "Who"

By generically naming the "inventor, his law firm, and/or the prosecution attorney" as the actors in its inequitable conduct claim, BesTop has failed to adequately plead the "who" under established Federal Circuit law. The essence of BesTop's claim of inequitable conduct is that someone associated with Webasto failed to bring to the attention of the PTO examiner the existence of prior art. BesTop identifies the prior art as Webasto's U.S. Patent No. 8,042,858 B2 ("Webasto's '858 Patent"). BesTop identifies the "material term" as "intermediately positioned hinge points" for "a coupling rod" between the side legs of two tensioning bows. (Counterclaim ¶ 32.) BesTop alleges that "[t]he inventor, his law firm, and/or the prosecution attorney failed to bring this to the attention of the Patent Office contrary to their duty of disclosure, particularly at the time of the telephonic interview of February 24, 2016." (Counterclaim ¶ 34.) This tells us that BesTop is actually unsure who committed the material omission:

> These allegations fail because they do not adequately identify the "who," the specific "individual associated with the filing and prosecution of a patent application [who] ... failed to disclose material information...." *Exergen*, 575 F.3d at 1327 n. 3. By alleging that "[the inventor], [his law firm], *and/or* [the prosecution attorney]" (emphasis added) committed a particular act, [BesTop] has not alleged that any one of those individuals necessarily committed the particular act, nor has [BesTop] clearly pleaded any joint concert of action. Indeed, it appears from the pleading in the alternative that [BesTop] is uncertain who actually committed the

12

act. The following factual scenarios could all fit within the allegations: [the inventor] committed the act, but [his law firm] and [the prosecution attorney] did not; [the inventor's law firm] committed the act, but [the inventor] and [the prosecution attorney] did not; neither [the inventor] nor [his law firm] committed the act, but [the prosecution attorney] did; [the inventor] and [the prosecution attorney] committed the act, but [the inventor's law firm] did not; [the inventor's law firm] and [the prosecution attorney] committed the act, but [the inventor] did not; and [the inventor] and [his law firm] committed the act, but [the prosecution attorney] did not. This is insufficient as it does not identify the "who": the person or persons who committed the acts constituting the elements of the defense.

*Drew Technologies, Inc. v. Robert Bosch, L.L.C.*, No. 12-15622, 2014 WL 562458, at *3 (E.D. Mich. Feb. 13, 2014) (citing *Mitsubishi Heavy Indus., Ltd. v. Gen. Elec. Co.*, No. 10-cv-812, 2012 WL 831525, at *2 (M.D. Fla. Mar. 12, 2012) ("Through the "and" part of the conjunction, GE has managed to lump the named inventors, attorneys, and agents together under the title "Applicants," and through the "or" portion GE has disjoined them; the result is that GE has failed to specifically identify who is guilty of misconduct.")). Far from singling out the individual with specific intent, such allegations indiscriminately accuse and/or absolve them all.

BesTop's inequitable conduct counterclaim does not permit a plausible inference that "a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29.

13

"The pleading . . . provides no factual basis to infer that any specific individual, who owed a duty of disclosure in prosecuting the ['342] patent, knew of the specific information in the ['858] patent that is alleged to be material to the claims of the ['342] patent." *Id*. at 1329.

BesTop's generic pleading is exactly the sort at which the Federal Circuit has taken aim in cases like *Therasense* and *Exergen*. BesTop suggests that because it identifies the prior art in its pleading, and specifically identifies which claim limitations that prior art is relevant to, it has "on balance" satisfied *Exergen* and Rule 9(b). But nothing in *Exergen* suggests that intent, materiality, and the "who, what, where, when, and how" of the alleged misrepresentations are factors to be *balanced* against one another. They are necessary elements, each of which must be pleaded with sufficient particularity.

### B. BesTop Fails to Allege Facts That Plausibly Suggest a Specific Intent to Deceive or the Materiality of Prior Art Reference

"Although 'knowledge' and 'intent' may be averred generally, [Federal Circuit] precedent, like that of several regional circuits, requires that the pleadings allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen*, 575 F.3d at 1327. As discussed *supra*, BesTop's allegations fail to plausibly suggest that a specific individual actually knew

of material information or knew of false information that was being presented to the PTO and withheld or misrepresented that information with a specific intent to deceive to the PTO. *Exergen*, 575 F.3d at 1328-29. Without identification of the individual responsible for the alleged misrepresentation it is of course impossible for the Court to plausibly infer his or her specific intent to deceive.

Not only does BesTop fail to identify the "who," and to plausibly suggest the "who's" specific intent, but BesTop also fails to identify what knowledge the "who" possessed about the prior art that satisfies the "but-for" materiality element of a claim of inequitable conduct. "When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Therasense*, 649 F.3d at 1291. BesTop simply states that the claim term "immediately positioned hinge points," for "a coupling rod" between the side legs of tensioning bows was "material." (First Amended Counterclaim ¶ 32.) BesTop refers to Exhibit 1 of its Answer and First Amended Counterclaim at pages 107-08 and 122-23 (First Amended Counterclaim ¶¶ 32-33) (presumably BesTop means PgID 107-08 and 122-23), and refers generically to "Webasto's '858 patent" as the source of the prior art, but fails to allege that the PTO would have rejected the claims of the '342 patent had it known of the '858 patent. (Counterclaim ¶¶ 33-34.) BesTop has failed to allege the "how" – "how the USPTO

would have used this material information in assessing patentability." *Recticel Automobilesysteme GMBH v. Automotive Components Holdings, LLC*, No. 10-14097, 2011 WL 5307797, at *7 (E.D. Mich. Nov. 3, 2011). This type of pleading does not suffice under *Therasense* and *Exergen*.[1]

BesTop's inequitable conduct counterclaim is an example of the very formulaic "knee jerk" filing that has been expressly rejected by the Federal Circuit as a litigation tactic that, when unwound, is insufficient to state a plausible claim for relief and lacks merit to proceed further. BesTop suggests that Webasto has "ignored" more recent Federal Circuit precedent, *Amercian Calcar, Inc. v. American Honda Motor Co., Inc.*, 768 F.3d 1185 (Fed. Cir. 2014), in attacking BesTop's inequitable conduct counterclaim. But *American Calcar* simply applied *Therasense* in determining whether inequitable conduct was proven on the fully developed record before the court. It was not a case analyzing the pleading requirements under Rule 9(b) or the sufficiency of the pleadings under Rule 12 (b)(6). The inequitable conduct ruling in

---

[1] Nor has BesTop pleaded *any* facts that would suggest that they are relieved of the obligation to plead but-for materiality based upon "egregious misconduct." *See Therasense*, 649 F.3d at 1292 ("When the patentee has engaged in affirmative acts of egregious misconduct, such as the filing of an unmistakably false affidavit, the misconduct is material."). But "neither mere nondisclosure of prior art references to the PTO nor failure to mention prior art references constitutes egregious misconduct . . . ." *Id*. The egregious misconduct exception to pleading but-for materiality is not in play here.

16

*American Calcar* was made on a fully developed record, indeed after a jury had returned its verdict and the case had been remanded for reconsideration of the inequitable conduct rulings in light of *Therasense*. Neither the district court nor the Federal Circuit in *American Calcar* had occasion to, and indeed did not, discuss the issue of sufficiency of the pleadings under the *Therasense* framework. As an important note of distinction, the "who" was clearly identified in *American Calcar* – a Mr. Obradovich – and the factual record had been fully developed through discovery and a trial, ultimately supporting the district court's finding of inequitable conduct under *Therasense* based on factual findings of materiality and based on the district court's finding of Mr. Obradovich's specific intent and his lack of credibility. *American Calcar* does not speak to the pleading insufficiencies at issue here.

### C. BesTop's Seventh Affirmative Defense is Stricken.

Federal Rule of Civil Procedure 12(f) provides that "the court may strike from a pleading an insufficient defense . . . ." Fed. R. Civ. P. 12(f). "Motions to strike affirmative defenses pursuant to Rule 12(f) are generally disfavored, but granting such motions is within the sound discretion of the district court." *Fields v. State Farm Mut. Auto. Ins. Co.*, No. 11-15296, 2012 WL 1119520, at *4 (E.D. Mich. April 3, 2012) (Borman, J.) (citing *Ameriwood Indus. Int'l Corp. v. Arthur Andersen & Co.*, 961 F. Supp. 1078, 1083 (W.D. Mich. 1997)). "An affirmative defense is insufficient if, as

17

a matter of law, the defense cannot succeed under any circumstances. A motion to strike under Rule 12(f) is proper where it will eliminate spurious issues before trial and streamline the litigation." *Id.* (internal citations and quotation marks omitted). *See also Drew Technologies*, 2014 WL 562458, at *2 ("A motion to strike an affirmative defense under Rule 12(f) will be granted if the defense is insufficient, if 'as a matter of law, the defense cannot succeed under any circumstances.'" (quoting *Ameriwood*, 961 F. Supp. at 1083); *Federal Nat'l. Mortg. Ass'n v. Emperian at Riverfront, LLC*, No. 11-14119, 2013 WL 5500027, at *7 (E.D. Mich. Oct. 3, 2013) ("A motion to strike an affirmative defense under Rule 12(f) is proper if 'as a matter of law, the defense cannot succeed under any circumstances.'") (quoting *Ameriwood*, 961 F. Supp. at 1083). "Striking an affirmative defense pursuant to Rule 12(f) is also proper 'if it aids in eliminating spurious issues before trial, thereby streamlining the litigation.'" *Emperian*, 2013 WL 5500027, at *7 (quoting *Specialized Pharmacy Servs., LLC v. Magnum Health and Rehab of Adrian, LLC*, No. 12–12785, 2013 WL 1431722 (E.D. Mich., Apr. 9, 2013)).

Because the Court finds that BesTop's inequitable conduct counterclaim fails to state a claim under Rule 12(b)(6) and fails to satisfy the particularity requirements of Rule 9(b), it follows that BesTop cannot succeed on its Seventh Affirmative Defense, which expressly incorporates by reference the allegations of Count III of its

18

First Amended Counterclaim. Striking BesTop's Seventh Affirmative Defense will also aid in eliminating a "spurious issue" before trial, keeping these parties focused throughout discovery on the infringement and invalidity issues in this patent action, and streamlining this litigation. Accordingly, BesTop's Seventh Affirmative defense is STRICKEN.

## IV. CONCLUSION

The Federal Circuit sent a clear message in *Therasense*, *Exergent*, and their progeny: in order to assert a claim of inequitable conduct, which levels an accusation of "moral turpitude" and necessarily "casts a dark cloud over the patent's validity and paints the patentee as a bad actor," *Therasense,* 649 F.3d at 1288, the pleader must specifically identify a bad actor, and plead with particularity exactly what he or she knew, what he or she failed to do with that knowledge, and how disclosing that knowledge would have resulted in a rejection of the patent claim by the PTO. BesTop has pleaded none of these necessary facts here with sufficient particularity to merit advancing its inequitable conduct counterclaim (Count III of its First Amended Counterclaim) or its Seventh Affirmative Defense to the discovery phase.

Accordingly, the Court GRANTS Plaintiffs' Partial Motion to Dismiss BesTop's First Amended Counterclaim, DISMISSES Count III of BesTop's First Amended Counterclaim WITH PREJUDICE and STRIKES BesTop's Seventh

19

Affirmative Defense.

IT IS SO ORDERED.

                                              s/Paul D. Borman  
                                              PAUL D. BORMAN  
                                              UNITED STATES DISTRICT JUDGE

Dated: July 3, 2018

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 3, 2018.

                                              s/Deborah Tofil  
                                              Case Manager