UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEBASTRO THERMO & COMFORT
NORTH AMERICA, INC., ET AL.,

       Plaintiffs,                       No.16-13456

v.                                    District Judge Paul D. Borman
                                        Magistrate Judge R. Steven Whalen

BESTOP, INC.,

       Defendant.
_____/

**OPINION AND ORDER**

Before the Court is Plaintiffs' Motion for an Order Sanctioning Defendant for Making Material Misrepresentations of Fact to the Court [Doc. #37], which has been referred for hearing and determination under 28 U.S.C. § 636(b)(1)(A). I held a status conference regarding this motion of December 5, 2017, and conducted an evidentiary hearing on January 23, 2017, following which the parties filed supplemental briefs. For the reasons and under the terms set forth below, the Plaintiffs' motion will be GRANTED.

**I.    FACTS**

This is a patent case. Plaintiffs allege that Defendant Bestop, Inc. ("Bestop") infringed its U.S. Patent No. 9,346,342 (the "342 patent") by presenting a device it called the "Sunrider for Hardtop." Bestop filed a motion to dismiss [Doc. #11] alleging that the 342 patent was invalid because the device at issue was prior art, due to its public disclosure during Bestop's presentation to Fiat Chrysler Automotive Group ("FCA") prior to the Plaintiffs' patent application. Appended to Bestop's motion as Exhibit C was the

Declaration of David A. Smith, Bestop's Director of Engineering. Mr. Smith stated that after producing and designing prototypes of the device, he prepared a Power Point presentation for FCA and presented it, along with a prototype, at the FCA facility on February 5, 2015. Specifically, Mr. Smith stated in his declaration that on that date he gave a printed copy of the presentation to Tony Carvello at FCA. *Smith Declaration*, ¶ 7. Attached to Mr. Smith's Declaration in support of the motion to dismiss as Exhibit 1was a copy of the Power Point presentation. *Id*., Doc. #11, Pg. ID 105-110. That document did not contain a footer stating that "[d]isclosure or duplication without consent is prohibited" or any other notation indicating that the presentation was to be treated as confidential, not public.

Appended to Plaintiffs' motion for sanctions is the declaration of Eric P. Carnevale, and attorney for Webasto. Mr. Carnevale states that in response to a document subpoena, FCA produced copies of the Power Point presentation that it had received from Bestop. *Carnevale Declaration*, Doc. #37, Pg. ID 596-597. The Power Point presentation that FCA produced is appended as Exhibit A to the Carnevale Declaration, and filed under seal [Doc. #40]. Every page of that Power Point presentation, with the exception of the cover page, has a footer stating, "Disclosure or duplication without consent is prohibited," unlike the copy that Bestop submitted with its motion to dismiss, which did not contain the footer.[1]

---

[1] Attached to Plaintiffs' Reply Brief [Doc. #44] is the affidavit of Jeremy J. Klobucar, senior staff counsel at FCA, offered to authenticate as a business record the Power Point presentation it received from Bestop and that it produced in response to Webasto's Rule 45 subpoena.

Appended to Bestop's response to the motion for sanctions [Doc. #43] is the declaration of Bestop's attorney, Jeffrey A. Sadowski.  Mr. Sadowski stated in his Declaration that in the course of finalizing Mr. Smith's declaration for the motion to dismiss, he worked from a native (electronic) Power Point, and that to file it with the Court, he converted this native version to a .pdf version.  *Sadowski Declaration*, Doc. #43, Exhibit A, ¶¶ 2-5, Pg. ID 917.  He stated that the conversion process caused the deletion of "some fine print at the bottom of some of the pages." *Id*. ¶ 6, Pg. ID 917-918.  He expressed uncertainty as to how the deletion occurred, but that since that time, dozens of changes have been made to the software, and "[t]he error cannot be currently duplicated after the bug fixes and other changes that are now in place." *Id*. ¶ 7, Pg. ID 918.  Mr. Sadowski stated that neither he nor Mr. Smith noticed the deletion, and that the deletion "was performed unintentionally during the processing of the documents for filing or submission by email." *Id.* ¶ 9, Pg. ID 918.  Finally, Mr. Sadowski' Declaration states that the Smith Declaration that was submitted with Bestop's motion to dismiss "specifically declared that consent was given to FCA to use the PowerPoint disclosure, as well as the prototype of the product that was publically disclosed to FCA, in a further public showing at Moab, Utah on Jeep vehicles. The Smith Declaration indicates that FCA took the Powerpoint presentation and viewed the prototype publically without any confidentiality or nondisclosure agreement whatsoever." *Id*. ¶ 11, Pg. ID 918-919.[2]

On January 13, 2018, 10 days before the scheduled evidentiary hearing, Mr. Sadowski filed a second Declaration [Doc. #58].  He states that after he received Webasto's Reply Brief [Doc. #44], he undertook further investigation, and found that the

---

[2] While Mr. Sadowski offered his *interpretation* of the Declaration, it did not in fact contain the explicit statements attributed to Mr. Smith.

Power Point presentation had been scanned to him, and that 47 minutes later, he transmitted the scanned document to Richard Hoffman (an attorney for Plaintiff). *Second Sadowski Declaration*, Doc. #58, ¶¶ 3-4. He also states that someone handed him a hard copy of the Power Point presentation, and that this copy did not have the non-disclosure footer. *Id*., ¶ 5. He states that when he filed Bestop's motion to dismiss, he was not aware that his office had more than one copy of the presentation. *Id*., ¶ 6. Mr. Sadowski indicates that when he and Mr. Smith were working on Mr. Smith's declaration, they worked from the native version of the Power Point, and that they believed that was the version that was used as Exhibit 1 the Declaration, when in fact they used the version that had been emailed to Richard Hoffman (i.e., the scanned version). *Id*., ¶¶ 8-9. He states that neither he nor Mr. Smith noticed the "missing fine print" on the document that was submitted with the motion to dismiss, and that the creation of the version that was used "is believed to have occurred by Bestop or Warn Partners in the context of preparation of patent applications or the drafting of other versions of the Power Point presentation in 2014 or 2015, and was unrelated to this lawsuit." *Id*., ¶ 11.

Evidentiary Hearing Testimony

<u>David Smith</u>

David Smith, Bestop's Director of Engineering, testified at the January 23, 2018 evidentiary hearing.[3] He testified that he signed the Declaration that Bestop submitted with its motion to dismiss; he supplied the facts to Mr. Sadowski, who prepared the Declaration. (Tr. 6-8). He briefly reviewed a hard copy of the Power Point presentation that was submitted with his Declaration. (Tr. 10). Mr. Smith testified that the Power

---

[3] The transcript of the evidentiary hearing is found at Doc. #60. References to page numbers of the transcript in this Opinion will be designated by "Tr."

Point that he reviewed included the non-disclosure footer, and that the footer was part of the template for the Power Point software supplied by Magna, Bestop's parent company. (Tr. 11, 20). He did not put the footer on the document himself. (Tr. 35). He acknowledged that over the years, Bestop has shared confidential information with FCA, and that Bestop expects FCA to honor confidential information. (Tr. 10).

Mr. Smith testified that the Power Point presentation attached to his Declaration is not the one that he sent to FCA, and that the presentation attached to his Declaration is missing the footer. (Tr. 12-13). The presentation that he created and that he provided to FCA (admitted at the hearing as Plaintiff's Exhibit 2) did have the footer on every page. (Tr. 19). He did not know whether the copy of the Power Point he gave to Mr. Sadowski had the footer or not. (Tr. 21). However, he sent a native version of the Power Point, containing the footer, to FCA. He was not aware of any software bug that would have deleted the footer (Tr. 22).

Mr. Smith testified that he did not consider the disclosure to FCA to be confidential, and that Bestop did not request a confidentiality agreement. (Tr. 36). Over the years, however, he has disclosed confidential information to FCA without a non-disclosure agreement. (Tr. 42-43) He described the presentation at the FCA facility as being held in an open space that would have been accessible to FCA employees or "anyone that can access the Chrysler Tech Center." (Tr. 36-39). However, he could not identify anyone that was present who was not a Bestop of an FCA employee. He acknowledged that the public cannot walk into the Chrysler facility whenever they want, but must sign in and pass through a security protocol. (Tr. 43). Mr. Smith testified that "in his mind" he gave FCA consent to disclose the information in the presentation. (Tr. 42).

In response to questioning by the Court, Mr. Smith acknowledged that the email sent to FCA, containing the Power Point with the footer, bears his email address. (Tr. 51).

Jeffrey Sadowski

Mr. Sadowski testified that he worked with the electronic version of the Power Point when he was talking to Mr. Smith about his declaration, but that he did not remember if the version he sent to FCA had the non-disclosure footer. (Tr. 57). He acknowledged, however, that the Power Point that Webasto obtained from FCA had the footer, but the version he filed with the Court with his motion to dismiss did not (Tr. 60-61). He opined that it would not have been helpful to the Court to have had the version with the footer. (Tr. 62).

Mr. Sadowski testified that he and Plaintiff's counsel met after Webasto obtained the Power Point from FCA, but he denied that Webasto's counsel offered him the ability to raise the discrepancy with the Court. (Tr. 76). Mr. Sadowski did not in fact raise the issue with the Court. (Tr. 77).

Mr. Sadowski reiterated that he had a copy of the native Power Point presentation when he worked on the Smith Declaration, and that the native copy had the non-disclosure footer. (Tr. 79). In Mr. Sadowski's first Declaration (submitted with his response to the motion for sanctions), he stated that he used a software application to convert the native version to .pdf. That was what he thought at the time, but after "further investigation" he discovered that was not true. (Tr. 80). Nor was it true, as he said in his first Declaration, that he used the same software to convert the presentation to .pdf before sending it to Webasto's counsel or that the footer was deleted in the conversion process. (Tr. 80-81). He testified that at the time, he had evidence in his possession that could have shown that the Power Point was scanned, not converted, and that this evidence "was

ultimately discovered and produced." (Tr. 82). He said that when he filed his original Declaration in response to the motion for sanctions, he in fact had information that could have shown that he never converted the native Power Point to a .pdf file, but he "didn't know it at the time." (Tr. 95). He stated that the email he sent to Webasto's counsel, containing the presentation, had file properties indicating that the Power Point had been scanned, not converted, but he did not do any "follow up" investigation until Plaintiff's counsel brought it up in Webasto's Reply Brief in the motion for sanctions. It was only at that point, he testified, that he realized that he had used a scanned Power Point document. (Tr. 82-85, 95).

Mr. Sadowski testified that before the pre-hearing status conference with the Court, he had investigated and learned that the Power Point was a scanned document, not a .pdf conversion that was affected by a software bug, but he did not inform the Court at that time. (Tr. 96).[4] He did not submit his second, amended Declaration until January 13, 2018, 10 days before the evidentiary hearing. (Tr. 99).

Mr. Sadowski stated affirmatively that he did not fabricate evidence by removing the footer, and does not know anyone who did. (Tr. 121). He opined that it was irrelevant whether the version of the Power Point he filed with the Court did or did not have the non-disclosure footer because the FCA meeting was in a public place. (Tr. 123-124).

---

[4] Although the testimony refers to an initial "hearing," in fact the proceeding was an in-chambers status conference held on December 5, 2017. Thus, by that date Mr. Sadowski knew that his first Declaration, attributing the deletion to a software bug introduced during the conversion to .pdf, was erroneous. He filed his second Declaration 39 days later, on January 13, 2018.

## II. ANALYSIS

It has long been held that federal courts possess the inherent authority to sanction bad faith conduct, including conduct that is "tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011)(citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 756 (1980), citing *Link v. Wabash RR Co.*, 370 U.S. 626, 632 (1962)(recognizing "the 'well acknowledged' inherent power of a court to levy sanctions in response to abusive litigation practices."). The concept of "bad faith" conduct does not refer to conduct that is merely negligent, but includes conduct that is either intentional or reckless. In *United States v. Wheeler*, 154 F. Supp. 2d 1075, 1078–79 (E.D. Mich. 2001), the Court, citing cases from the Supreme Court, the Sixth Circuit, and this Court, described "recklessness" as follows:

> "'Recklessness is defined as more than mere negligence but less than intent.'" *In re Champion Enterprises, Inc., Securities Litigation*, 144 F.Supp.2d 848, 858 (E.D.Mich.2001) (citing *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1024 n. 36 (6th Cir.1979)); see Black's Law Dictionary (7th ed.1999) (defining 'recklessness' as involving 'a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing'); *see also Smith v. Wade*, 461 U.S. 30, 45, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (describing recklessness as short of actual malicious intent). The Sixth Circuit has defined 'recklessness' as 'highly unreasonable conduct which is an extreme departure from the standards of ordinary care.' *Ohio Drill & Tool Co. v. Johnson*, 625 F.2d 738, 741 (6th Cir.1980); see Black's Law Dictionary (7th ed.1999) (defining 'recklessness' as '[c]onduct whereby the actor does not desire harmful consequence but nonetheless foresees the possibility and consciously takes the risk')."

As an initial matter, after reviewing the pleadings and exhibits and hearing the testimony at the evidentiary hearing, I do not find that Mr. Sadowski intentionally doctored the Power Point presentation or intentionally proffered false or misleading evidence to the Court when he filed Bestop's motion to dismiss. Had that been the case, I would be inclined to recommend a dismissal of Bestop's counterclaim and possibly a default judgment in favor of Webasto. *See Plastech Holding Corp. v. WM Greetech*

*Automotive Corp*., 257 F.Supp.3d 867 (E.D. Mich. 2017). However, I do find that his conduct was reckless as defined the above cases, both as to the initial filing of the Power Point presentation from which the non-disclosure footer was removed, and as to his failure to undertake a serious investigation as to why the error occurred and to timely bring the matter to the Court's attention.

The gist of Bestop's motion to dismiss was that the presentation to FCA was a public disclosure that invalidated Plaintiff's claim as prior art. The basis of the motion would therefore be open to question in the light of evidence that the presentation was not public, but subject to confidentiality and non-disclosure. I will address Mr. Sadowski's "lack of relevance" argument at greater length later, but at this point suffice it to say that a footer on every page of the Power Point stating that "[d]isclosure or duplication without consent is prohibited" is on its face relevant information. First, before an attorney files an exhibit, it should be carefully scrutinized for completeness and accuracy. And a reasonable attorney who became aware that he or she had inadvertently filed an exhibit that had deleted this information would be horrified. The first thing that attorney would do would be to immediately notify the Court. The attorney would then undertake an exhaustive investigation of how the error occurred. Last, but not least, the attorney would offer a sincere apology to the Court and to opposing counsel.

Mr. Sadowski did none of these things. Instead, after being informed that he filed an exhibit that he should have known had relevant information removed, he dug in. This is what he did (and did not do):

When he prepared the Smith Declaration, he worked from the native version of the Power Point, which contained the non-disclosure footer. He attempts to minimize his error by referring to it as the "fine print at the bottom of the page," but it appeared on

every page. It was obvious. Before the version of the presentation with the footer removed was filed, he should have carefully examined the exhibit to make sure it conformed to the native version by comparing the two. He could have filed the complete version and argued, as he does now, that the footer did not really constitute a valid non-disclosure agreement.

In response to the motion to dismiss, Plaintiffs requested that the Court deny the motion "and permit Webasto to conduct full and complete discovery regarding its claims of patent infringement." *Plaintiff's Response* [Doc. #14], Pg. ID 214. In Bestop's reply brief, Mr. Sadowski scoffed at the idea that any discovery would refute his theory that there was a public disclosure of the device. He stated that "[no] amount of discovery will change the undisputed facts," that the case should be dismissed "without further delay or unnecessary discovery," and that "discovery does not stand a chance of changing what Defendant has already established...." *Reply Brief* [Doc. #17], Pg. ID 244. Yet the "undisputed evidence" included an exhibit that omitted a footer from which a trier of fact could reasonably infer that Bestop's presentation to FCA was *not* public, but confidential.

Plaintiff experienced difficulty in getting discovery from Webasto, including the request for other copies of the Power Point. When Plaintiff's counsel obtained the copy that Bestop had sent to FAC, he and Mr. Sadowski met to discuss the matter. Although Mr. Sadowski denied that Webasto's counsel "offered him the ability" to raise the discrepancy with the Court, he conceded that he met with Plaintiff's counsel. (Tr. 76). This was before the motion for sanctions was filed. Again, most lawyers would be horrified to learn that they had filed such a document with the Court, even (or especially) if they had done so mistakenly, and would have immediately informed the Court without being "offered the ability" to do so by opposing counsel. Mr. Sadowski did not inform

the Court. (Tr. 77). Indeed, the Court was not aware that Bestop had filed an incomplete exhibit until Plaintiff filed its motion for sanctions. Had Mr. Sadowski timely informed the Court, perhaps this motion for sanctions would have been unnecessary.

Instead of being horrified, or at least contrite about filing an exhibit that did not contain the non-disclosure footer, Mr. Sadowski's response has been that it would not have made any difference if he had filed the complete version. He testified as follows:

> Q: So you don't think it would have been useful for the Court to have seen the presentation that had the nondisclosure footer on it in contemplating whether or not to grant your motion to dismiss?
>
> A: I don't think so. I think our motion would have been the same motion, your response would have been the same response, and the judge would have ruled the same way. (Tr. 62).

\*       \*       \*

> Q: (Referring to Bestop's reply brief) And then you go down in that same paragraph, and you say, "no circumstances would exist that the meeting and the disclosures were anything except public disclosures"; is that fair?
>
> A: that's what it says, yes.
>
> Q: right. And in fact, you had information in your possession that suggested that maybe the presentation wasn't public; is that right?
>
> A: That's not correct.
>
> Q: You had a presentation in your possession that the Court didn't have that had a nondisclosure footer in it, right?
>
> A: But that wouldn't change anything with respect to the public disclosure or circumstances or inferences existing that the meeting and the disclosures were anything except public disclosures.
>
> Q: You're making that decision now, but a court may have found differently; is that fair?
>
> A: I don't believe so. I've never seen a case where that's happened. (Tr. 66-67).

Of course Mr. Sadowski's opinion (and it is just that, an opinion) that the presence or absence of the nondisclosure footer would not have been relevant is absurd. The footer said *on its face* that disclosure without consent was prohibited. One can perhaps debate the effect of the nondisclosure statement in the context of other evidence, but that is ultimately an issue for the trier of fact. Take away the nondisclosure footer and you take away a relevant fact that could affect the ultimate decision of whether the presentation was public or private.[5]

Nor does it appear that Mr. Sadowski undertook an investigation until after the motion for sanctions was filed. That investigation was woefully inadequate, and has been followed by shifting and changing explanations as to what happened. In his first Declaration in response to the motion for sanctions, Mr. Sadowski blamed a software bug or malfunction that occurred when he converted the native version of the Power Point to a .pdf version. He stated that the deletion "was performed unintentionally during the processing of the documents for filing or submission by email." He stuck with that story until he received Webasto's Reply Brief, at which point he undertook "further investigation." Yet he testified that when he filed his original Declaration, he was in fact in possession of information that would have shown he never converted the native version to a .pdf file. Indeed, he testified that the email he had earlier sent to Webasto's counsel, containing the Power Point presentation, had file properties showing that the presentation

---

[5] Mr. Sadowski's position seems to be that there was uncontraverted evidence that the presentation was held in a place open to the public, and was therefore a public presentation. However, Mr. Smith testified that the FCA facility was not freely open to the general public, and that visitors had to pass through a security protocol. He was unable to say whether anyone was present other than FCA of Bestop employees. There is plainly a question of fact as to whether the presentation was limited to FCA employees.

had been scanned, not converted.[6] Yet, he did no serious follow-up investigation until much later, when Webasto brought it up in its Reply Brief. And he did not submit his second Declaration, contradicting the first, until 10 days before the evidentiary hearing.

In *United States v. Wheeler*, the attorney was sanctioned for, among other things, "failing to undertake the most basic investigation of the underlying facts." *Id*., 154 F.Supp.2d at 1079. Likewise here, from beginning to end Mr. Sadowski failed to undertake any measures that would have assured that a complete document was submitted to the Court, or to undertake a reasonable and timely investigation of the facts. He has taken little responsibility for the erroneous submission, and says, in effect, "It's no big deal." Well, when misleading evidence if filed with the Court, or there is a misrepresentation of a material fact, it is a big deal.

Which brings us to the question of prejudice. The Court denied Bestop's motion to dismiss even without the complete and correct exhibit. However, the filing of this misleading exhibit, followed by Mr. Sadowski's decision to not inform the Court, his untimely and inadequate investigation into the cause of the false filing, his complete lack of contrition, and his cavalier attitude about the seriousness of this matter, is an affront to the integrity of the judicial process, regardless of the fact that Bestop lost the motion. Plaintiff has cited *Secrease v. Western & Southern Life Insurance Co.*, 800 F.3d 397 (7th Cir. 2015), in which the Seventh Circuit made the point:

> "...[F]alsifying evidence to secure a court victory undermines the most basic foundations of our judicial system. If successful, the effort produces an

---

[6] Ironically, Mr. Sadowski in Bestop's response to the sanctions motion [Doc. #44], Pg. ID 910, asks for sanctions against Webasto's counsel for not conducting a proper investigation, stating, "Attorney Smith should have investigated the facts, which could have been accomplished through simple discovery requests and an examination of the file 'properties' for all of the documents in question." This is a good example of a pot-and-kettle discussion.

unjust result. Even if not successful, the effort imposes unjust burdens on the opposing party, the judiciary, and honest litigants who count on the courts to decide their cases promptly and fairly." *Id*. at 402.

I recognize that unlike *Secrease* and *Plastech*, the submission of the altered exhibit was not intentional. But it was reckless. As the Court in *United States v. Wheeler* noted, "While [the attorney's] conduct may not have been with malicious intent, this Court finds that it also was more than merely negligent." *Id*., 154 F. Supp.2d at 1079. And the burdens placed on the judicial system and on opposing counsel are substantial. In *Marrocco v. Gen. Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992), the Court found reckless conduct, similar in scope to what occurred in the present case, sanctionable, even without a finding of intentionality:

> "Goodyear's conduct readily falls within the classification of 'fault.' It reflected extraordinarily poor judgment in the way it packaged, labeled and handled the rim base and side ring. Equally inexcusable is the uncontested finding that Goodyear stood idly for months before it attempted to investigate the side ring's apparent loss; it waited even longer before informing the plaintiffs that the side ring was missing. These omissions cannot be characterized merely as a mistake or carelessness. Rather, they reflect gross negligence on the part of Goodyear—a flagrant disregard of its assumed duty, under the protective order, to preserve and monitor the condition of evidence which could be pivotal in a lawsuit."

Therefore, sanctions are appropriate, proportional to the facts of this case.

In *Roadway Exp., Inc. v. Piper,* 447 U.S. at 764–65, the Supreme Court stated, "Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion." *Citing Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 450–451 (1911). Plaintiff has not requested a default judgment, nor do I believe such an extreme sanction is appropriate. Nor will I impose the equally extreme sanction of dismissing Bestop's counterclaim.

First, Mr. Sadowski will be required to pay attorneys fees to Webasto's counsel for time reasonably expended in litigating what should have been an otherwise unnecessary motion for sanctions. Imposition of attorney fees is an available sanction under these circumstances. *See United States v. Wheeler*, 154 F. Supp. 2d at 1079; *Murray v. City of Columbus*, 534 Fed.App'x 479, 484 (6th Cir. 2013).

Secondly, while I decline to dismiss Bestop's counterclaim, I will exclude Bestop's use of any evidence related to the Mr. Smith's Power Point presentation to FCA.

### III. CONCLUSION

Plaintiffs' Motion for an Order Sanctioning Defendant for Making Material Misrepresentations of Fact to the Court [Doc. #37] is GRANTED.

Defendant Bestop is precluded from any evidentiary use of the Smith Power Point presentation to FCA, described above.

Attorney Jeffrey Sadowski will pay Plaintiff's reasonable attorney fees related to the motion for sanctions.

Within 14 days of the date of this Opinion and Order, Plaintiff will file with the Court a statement of attorney fees substantiating the number of hours expended and the claimed hourly rate related to this motion.

Within 14 days after Plaintiff files its statement, Mr. Sadowski may file a response addressing the reasonableness of Plaintiff's fee request.

IT IS SO ORDERED.

s/ R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: August 9, 2018

# CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing document was sent to parties of record on August 9, 2018, electronically and/or by U.S. mail.

                                        s/Carolyn M. Ciesla
                                        Case Manager to the
                                        Honorable R. Steven Whalen