## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION – DETROIT

| | |
|---|---|
| WEBASTO THERMO & COMFORT NORTH AMERICA, INC. and WEBASTO-EDSCHA CABRIO USA INC., | No. 2:16-cv-13456-PDB-RSW |
| Plaintiffs, | |
| v. | Honorable Paul D. Borman |
| | Magistrate Judge R. Steven Whalen |
| BESTOP INC., | |
| Defendant. | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

| | |
|---|---|
| WEBASTO THERMO & COMFORT NORTH AMERICA, INC. and WEBASTO-EDSCHA CABRIO USA INC., | No. 2:16-cv-13456-PDB-RSW |
| Plaintiffs, | |
| v. | Honorable Paul D. Borman |
| | Magistrate Judge R. Steven Whalen |
| BESTOP INC., | |
| Defendant. | |

## SPECIAL MASTER'S REPORT AND RECOMMENDATIONS

## I.    INTRODUCTION

The Plaintiffs are Webasto Thermo & Comfort North America, Inc.

and Webasto-Edscha Cabrio USA Inc. (collectively "Webasto").  Webasto

brought this action against Defendant Bestop, Inc. ("Bestop"), asserting

infringement of U.S. Patent No. 9,346,342 (the '342 Patent").  The '342

Patent relates to a vehicle roof opening mechanism that can be opened or

closed from inside the vehicle.  In particular, Webasto asserts that Bestop

infringes independent claims 1 and 6 and dependent claims 3 and 5.

Although, in general, Bestop denies infringement of all asserted claims, a

threshold issue is whether Bestop has admitted that most of the claim limitations at issue are present in the accused products.

This case is now before the Court to decide the above issue and for construction of the disputed claim limitations of the '342 patent.  The parties submitted both opening and responsive briefs and a *Markman* hearing was conducted on October 12, 2018.  In connection with the hearing the parties used power point slides to argue their positions.  These slides, along with the transcript of the hearing, provide the Court with an excellent summary of the arguments of the parties and will be referenced as necessary throughout this Report.  (*See* Webasto slides 4-7 for a summary of the invention and slide 8 for a copy of Claim 6, a "representative claim")

As usual, the briefs of both parties include sections citing the accepted and well understood rules of claims construction.  Since this Court is quite familiar with these general rules, however, only a few will be cited as necessary in connection with specific arguments of the parties and the Special Master's analysis of the arguments.

As noted, Webasto contends that since Bestop does not dispute the fact that its accused products have all of the limitations in claims 1 and 6, except for the final limitations, only these final limitations need construction. Accordingly, this issue will be addressed first.

## II.  IS CLAIM CONSTRUCTION REQUIRED FOR ANY TERMS OTHER THAN THOSE FOUND IN THE FINAL LIMITATIONS OF THE PATENT?

A.  WEBASTO'S POSITION

1.  <u>From Its Opening Brief</u>

"The Court should decline to construe claim terms that are not relevant to the determination of infringement.  Claim construction is used "when necessary to explain what the patentee covered by the claims, *for use in determination of infringement*."  *U.S. Surgical*, 103 F.3d at 1568.  Where a claim term is not material to infringement, the Court is not required to (and should not) issue a construction.  *See id*.

"Pursuant to the parties' *Joint Statement and Proposed Schedule*, (ECF No. 30), which was adopted by the Court (ECF No.32), BesTop was required to serve its non-infringement contentions on September 22, 2017 identifying the factual and evidentiary basis for each of its alleged non-infringement defenses.  BesTop only disputed one limitation appearing in the body of the claims.  *BesTop's Contention* at 4, 6.  BesTop did not dispute that the

Accused Product possessed each and every other limitation of the Asserted Claims.  *Id.*  Thus, for the purposes of infringement, the Court need only determine the scope of the one disputed claim limitation.  *See TNS Media*, 629 F. App'x at 938.

"In the absence of a dispute on infringement, BesTop's requested constructions are a request for an advisory opinion, which the Court lacks the jurisdiction to provide.  *Superior Indus., Inc. v. Masaba, Inc.*, 553 F. App'x 986, 989 (Fed. Cir. 2014) (if contested claim constructions would not "actually affect" the infringement analysis, "construction[] would amount to an advisory opinion"); *Bose Corp. v. SDI Techs., Inc.*, 828 F. Supp. 2d 415, 418 (D. Mass. 2011) ("Once again this Court must point out that its duty (and power) to construe claim terms is limited by the "case or controversy" clause of the Constitution, U.S. Const. art. III, § 2, cl. 1, ***to those few terms which make a definitive difference to the claims and defenses of this lawsuit***.").

"Because the majority of the terms BesTop seeks to construe would not impact the resolution of any ground of non-infringement BesTop has disclosed in its amended non-infringement contentions, the Court should not construe these terms.

"The one claim term that is actually disputed, and is material to the parties' claims and defenses, has an ordinary and customary meaning and requires no construction.  *Infra* Part III.B."

(Webasto's Opening Brief pp. 9-11).

### 2.    From Its Responsive Brief

"BesTop's Opening Brief fails to address Webasto's objection that the Court should not construe claim terms for which infringement is not disputed.  *See Webasto's Statement*, Ex. A at 1-6, Carnevale Decl. Ex. A; *BesTop's Amended Contentions* at 3-6 (ECF No. 46-9).  Construction of these claim terms is not required or permitted because it would result in an advisory opinion.

"The Supreme Court has explicitly held that Article III does not permit the courts to resolve issues when it is not clear that the resolution of the question will resolve a concrete controversy between interested parties."  *Jang v. Boston Sci. Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008) (citing *Coffman v. Breeze*, 323 U.S. 316, 322–24 (1945)).  The Court lacks jurisdiction to render an opinion "as to claim terms that do not actually affect the infringement controversy." *Superior Indus., Inc. v. Masaba, Inc.*, 553 F. App'x 986, 989 (Fed. Cir. 2014) (quoting *Jang*, 532 F.3d at 1336).

"Neither BesTop's initial non-infringement contentions nor amended infringement contentions dispute that BesTop infringes the limitations of claims 1-3, and 5-6, except for the final limitation of claims 1 and 6. *BesTop's Amended Contentions* at 3-6. The unchallenged limitations do not present a concrete controversy between the interested parties. *See Jang*, 532 F.3d at 1336. Thus, the construction of these limitations is not properly before this Court, and the Court should not provide one. *See id*.

"To the extent the Court decides to construe claim terms recited in the unchallenged claim limitations, each such term is entitled to its ordinary and customary definition, and no construction is required.

(Webasto's Responsive Br. Pp. 8-9).

### 3.   From the *Markman* Hearing

A summary of Webasto's arguments from the hearing is found in slides 11 to 15 (transcript pages 5 to 11, 16) and specific references to these arguments are included in the Special Master's analysis and recommendations.

B.    BESTOP'S POSITION

1.    <u>From Its Opening Brief</u>

There are no arguments on this issue.

2.    <u>From Its Responsive Brief</u>

Even though Webasto provided the Court with a detailed argument in support of its position in its briefs, Bestop had only the following response:

"Initially, Webasto argues that this term should not be construed by the Court because Bestop has not set forth a non-infringement defense based on the construction of this term (interchangeable insert).  However, Bestop identified '*interchangeable insert*' as disputed in its listing of claim terms in dispute and indicated it as not infringed in Noninfringement Contentions.  *See* **Ex. 6**, Bestop's Statement of Claim Terms to be Construed at pp. 1, 4; **Ex. 7**, Bestop's Am. Resp. to Infringement Contentions, at pp. 3-20; **Ex. 8**, Bestop's Resp. to Infringement Contentions.  And, as explained, Bestop will have another opportunity to define its contentions after the Court construes the meaning of '*interchangeable insert*.'  Accordingly, Webasto's argument that '*interchangeable insert*' should not be construed should be rejected."

(Bestop's Responsive Br. p.11).

   3.  <u>From the *Markman* Hearing</u>

  Bestop's slides 2 to 17 all relate to its arguments in support of its construction of the terms *intermediately positioned*, found in the final limitations in Claims 1 and 6. The parties agree that construction is needed for these limitations. Slides 18 to 35 relate to the other limitation terms that Bestop contends require a construction. None of Bestop's slides relate to the issue under consideration in this section of the Report. Even so, Mr. Sadowski, counsel for Bestop, did provide the following response:

   "MR. SADOWSKI: My understanding of the process here
   was initially we were going to tell them which claims we
   admitted to infringement and which we didn't. We indicated
   that we didn't admit to infringement of any of them. We gave
   them some reasons as to that. The claims terms that we're
   trying to get interpreted here are not only limited to
   infringement, they also define invalidity, and as this case
   proceeded, it was evident that they put a minimal amount of
   effort into their contention of infringement. They said
   everything's -- everything's here, here's an arrow to a large

group of products.  And then they went on to say that no claim

terms need to be interpreted, everything is general meaning.

As the case proceeded, it was apparent that the terms

that they used need to be defined.  So we had a process here

where we initially gave them an op -- our position that we

didn't infringe the claims, we gave them an invalidity analysis

too which talked about how invalid these claims are, and then

there was an opportunity for -- that the Court gave us to list

the claim terms that we wanted to be defined and then we'll

have another opportunity to revise our

infringement-noninfringement chart and our invalidity chart

after you've defined those terms.  That's the way I understood

the process.  So they didn't provide a lot of detail in their

infringement analysis; I did not provide a lot of detail in our

noninfringement analysis and it was very early in the case.

My understanding of the process was that since

we're -- we out -- the opportunity was offered for definition

of claim terms and then another shot at the noninfringement

that I didn't need to provide you as much details in the

initial one, we've defined the claim terms and then the detail

can come in.  That was my understanding of the process.

THE SPECIAL MASTER:  I still, I would like to have

your explanation of particular language that we had up on the

screen a minute ago that was in your amended responses.

MR. SADOWSKI: Well --

THE SPECIAL MASTER:  What were you trying to say there

about --

MR. SADOWSKI:  What I was trying to say was that

however we interpret those claims, they're going to cover the

Haberkamp reference, so.

THE SPECIAL MASTER:  What do you mean by that?

They're going to be -- that reference would -- 102 invalidity?

MR. SADOWSKI:  It was a 102 invalidity reference,

except for the fact that they added the last element of the

claim.  And what I'm saying is that however we interpret it,

it's still going to be a 102 reference except for the last

element of the claim.

THE SPECIAL MASTER:  But are you admitting that every

one of these elements other than the last element is found in

your product?

MR. SADOWSKI:  I don't believe -- I was saying that if -- the only way that they could find it in my product is to have an invalid claim.  So at that point in time I wasn't sure how they were going to interpret the claim language.  Like I said, it was very early in the case.  They didn't provide any definitions of their claim language.  I didn't provide any definitions of my claim language.  I don't think that you can infringe an invalid claim.  That's what I'm saying here.

THE SPECIAL MASTER:  All right.  Okay.

MR. SADOWSKI:  And so if we're interpreting these claim terms for validity purposes or for infringement purposes, you know, it may -- does it really have -- I mean, it's an issue for validity.  It's defined in the validity section.

THE SPECIAL MASTER:  You're not admitting that it's found in -- that each one of those elements is found in your product?

MR. SADOWSKI: I am not.

THE SPECIAL MASTER:  You're not.

(*Transcript* pages 11 to 16, and 18.)

C.    SPECIAL MASTER'S ANALYSIS AND
      RECOMMENDATIONS

1.    <u>Analysis</u>

As noted, Webasco contends that Bestop has not disputed the fact that

its accused products have all of the claim limitations in the asserted claims,

but for the term *"intermediately positioned"*.  Said another way, Webasco

contends that Bestop has not disputed the fact that its products contain each

of the following limitations:  *"interchangeable insert"; "by at least one*

*tensioning bow <u>fixedly pivotal</u>"; "fixedly pivotal"; "fixation elements being*

*manually unlockable"; "adjacent to"; "secured at" ; and, "an edge region*

*of a roof structure"*.  (Webasco slide 11).  It follows that if the Court agrees,

there is no need for construction of any of these latter limitations.

In support of its positions, Webasco relies on two documents of record

in this case.  First, they cite to the Joint Statement & Proposed Schedule:

"B. Noninfringement and Invalidity Contentions

        The Parties agree that Bestop shall file and serve

noninfringement contentions no later than September 22, 2017,

which shall explain the factual basis for any allegation that it

does not infringe the patent-in-suit either literally or under the

doctrine of equivalents, **including identifying what claim**

**limitations that it believes are not present in the accused**

**products** and who an equivalent is not present."

(at page 7). (slide 12) (emphasis added.)

This agreement has two parts: (1) explain why you contend you do not

infringe the '342 patent; and, importantly, (2) identify claim limitations you

contend are not present in the accused products.

Second, Webasto cites to the Defendant's Amended Non-

Infringement Contentions (Exhibit D to Webasto's Opening Brief), which is

Bestop's amended response to the requirements of the Joint Statement.  This

document (excerpted in Webasco's slides 13 and 14) has three columns: [1]

Claim Language (claim 6 is the focus here); [2] Not Found in Defendant's

"Accused Instrumentality"; and, [3] Noninfringement -Literal or Equivalent.

As to each of the claim limitations [1], other than the last, Bestop has

the identical response in [2]:

> "The Haberkamp prior art reference cited for this element
>
> in the '342 Patent prosecution is a Bestop product. The accused
>
> instrumentality has the same components as for this feature."

The first sentence is admittedly tied to Bestop's invalidity defense,

but, based on Mr. Sadowski's arguments at the *Markman* hearing, it was

intended as a response to the requirement that they "explain why you

contend you do not infringe the '342 patent."  As seen below, Mr. Sadowki

relies on the well-established rule that invalid patents cannot be infringed.

> "It (Haberkamp) was a 102 invalidity reference,
>
> except for the fact that they added the last element of the
>
> claim. And what I'm saying is that however we interpret it,
>
> it's still going to be a 102 reference except for the last
>
> element of the claim. ***
>
> THE SPECIAL MASTER: But are you admitting that every
>
> one of these elements other than the last element is found in
>
> your product?
>
> MR. SADOWSKI: I don't believe -- I was saying that
>
> if -- the only way that they could find it in my product is to
>
> have an invalid claim. ……. I don't think that you can
>
> infringe an invalid claim. That's what I'm saying here.

Turning to the second sentence, this is, on its face, a clear admission

by Bestop that its accused products have each of the limitations but for the

last one. At the hearing, however, counsel changed his tune:

> THE SPECIAL MASTER: You're not admitting that it's
>
> found in -- that each one of those elements is found in your

product?

MR. SADOWSKI: I am not."

In defense of his position relating to the above statements, Mr.
Sadowski also repeatedly argued that he didn't provide details because he
understood that after the Court had issued its claim construction, he would
have another opportunity to amend his infringement contentions.  Although
he did not cite any pleadings or law to support his position, it turns out that
the Joint Statement (cited above and relied on by Webasto) provides this
very opportunity:

> **"C.   Amendments to Contentions**
>
> Amendment of the Infringement Contentions and
> Noninfringement and Invalidity Contentions may be made one
> time **within 30 days of the Claim Construction decision by
> the Court**. …." (emphasis added.)

This right to amend is a standard right made available to the parties as
claim construction frequently leads to a need to amend the infringement
contentions.  If a claim construction narrows a limitation, it may afford a
defendant an new opportunity to demonstrate that its product does not have
the limitation as now defined.  In the present case, however, Bestop has
stated that no matter the interpretation of the limitation, the element is in the

prior art and in its product.  The statement that the limitation is found in the prior art is pure argument and open to challenge by Webasto.  However, Bestop's statement that the limitation is found in its products, has serious consequences. The right to amend post construction, to allow a defendant to change an admission to a non-admission, is not a given.    Mr. Sadowski's statement at the *Markman* hearing that he does not admit that each of the limitations is found in Bestop's products, is not effective to change the clear language used in the referenced document.  He could have made this admission contingent upon a finding that the limitation is also found in the prior art, but he did not.

Finally, and importantly, the Joint Statement requires Bestop to identify "**what claim limitations that it believes are not present in the accused products** and why an equivalent is not present."  Thus, Bestop was obligated to state, and Webasto was entitled to know, exactly which of the claim limitations were **not found** in its products.  However, its infringement contentions do not include any such identifications for any of the claim limitations except for the last ones:

> "Bestop has no connections via intermediately positioned
> hinge points on the side legs of its auxiliary tensioning bow for
> any coupling rod between two bows"

(Exhibit D to *Webasto's Opening Brief* and slide 13).

Thus, the combination of Bestop (1) admitting that all the other limitations are in its products, and (2) failing to assert that these limitations are not found in its products, is fatal to its position on the issue.

### 2.   Recommendation

In light of the foregoing, it is the Special Master's recommendation that the Court find that **no claim construction is required** for any of the limitations under consideration in this section of the Report.

The arguments and analysis relating to the final limitation will be addressed next in this Report.  Also, since the Court may not agree with the foregoing conclusion and/or Bestop may succeed in seeking to revise its infringement contentions in light of this Report, all of the disputed terms will be reviewed, and recommendations made to the Court as to the meaning of such limitations.

## III.   CLAIM CONSTRUCTION FOR DISPUTED TERMS

### A.   INTERMEDIATELY POSITIONED

This term is found in the last limitation to claims 1 and 6:

"The coupling rod being articulated to the auxiliary

tensioning bow and to the main tensioning bow via

***intermediately positioned*** hinge points."

The parties agree that these terms should be interpreted, but of course

they have radically different suggestions as to its meaning.  The terms were

added at the suggestion of the Patent Office Examiner in order to avoid the

prior art.  Webasto did not object to this addition which narrowed the scope

of the claim, and the patent issued with the claim language as seen above.

### 1.   Webasto's position

**No construction**.

Support for Webasto's position and its reply to Bestop's arguments

are found in their Responsive Claim Construction brief.

(*See also*, *Markman* Hearing Slides 16 to 32).

## "I.   DISPUTED CLAIM TERM #1: "INTERMEDIATELY POSITIONED" SHOULD BE GIVEN ITS ORDINARY DEFINITION

BesTop asks the Court to construe the claim term "*the coupling rod*

*being articulated to the auxiliary tensioning bow and to the main tensioning*

*bow via intermediately positioned hinge points*," even though the parties

only materially dispute the definition of the term "intermediately positioned." *See Webasto's Opening Br.* at 11. Webasto contends this term should be given its ordinary meaning. *Id.* The construction proposed by BesTop is not supported by the claims or specification, and is inconsistent with the preferred embodiment. BesTop's proposed construction should be rejected, and the term "*intermediately positioned hinge points*" should be given its ordinary and customary definition, which is consistent with the dictionary definition provided by Webasto.

The Court may depart from the ordinary and customary meaning of claim terminology in only two instances. *Hill–Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). The first is when a patentee acts as his own lexicographer. *Id.* The second is when the patentee disavows the full scope of the claim term in the specification or during prosecution. *Id.* BesTop failed to show that either exception applies in this case.

Disavowal can be effectuated by language in the specification or the prosecution history. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316-17 (Fed. Cir. 2005) (en banc). In either case, ***the standard for disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature.*** *See Openwave*

*Sys., Inc. v. Apple Inc*., 808 F.3d 509, 513-14 (Fed. Cir. 2015); *Omega*

*Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323-26 (Fed. Cir. 2003).

Ambiguous language cannot support disavowal.  *Omega*, 334 F.3d at 1324;

see also *Schindler Elevator Corp. v. Otis Elevator Co.*, 593 F.3d 1275, 1285

(Fed. Cir. 2010).

        Contrary to BesTop's position, unilateral statements made by the

examiner will not result in a disclaimer of claim scope or the redefinition of

claim terms, as a matter of law.  *Salazar v. Procter & Gamble Co*., 414 F.3d

1342, 1347 (Fed. Cir. 2005) (unilateral statements of an examiner in stating

reasons for allowance, even where the applicant is silent in response, cannot

create a clear and unambiguous disavowal of claim scope); *see also*

*Northern Telecom Ltd. v. Samsung Electronics Co., Ltd*., 215 F.3d 1281,

1294 (Fed. Cir. 2000) (to rely on prosecution history to support exclusion,

defendants must show that "the patentees" excluded something "with

reasonable clarity and deliberateness.").  The applicant itself must take a

position before the Patent Office that clearly and unambiguously surrenders

claim scope they would otherwise be entitled to.  *Salazar*, 414 F.3d at 1347;

*Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324-25

(Fed. Cir. 2002).

During prosecution, an examiner's amendment was entered adding the term "intermediately positioned" to the claims.  *Notice of Allowability* at 2-3 (ECF No.49-7).  The examiner determined that the claims were patentable over prior art that included U.S. Patent No. 8,186,740 ("Huotari"), which had tensioning bows and auxiliary tensioning bows with "coupling rods [] articulated at the **upper ends** of the respective bows."  *Id*. at 3.

In figures excerpted by BesTop in its Opening Brief, it is clear that the examiner is referring to coupling rods articulated at the end points of the tensioning bows.  The Examiner's Notice of Allowability contains no other statements bearing on the construction of the term "intermediately positioned."  *See generally Notice of Allowability*.



FIG - 9

**The applicant** made no statements disavowing any claim scope, or adopting a special definition for any claim language, including the term "intermediately positioned."  Accordingly, the prosecution history cannot be used to limit the scope of the claims.  *Schwing*, 305 F.3d at 1324-25 ("The "prosecution history . . . cannot be used to limit the scope of a claim unless **the applicant** took a position before the PTO.").

BesTop errs as a matter of law by contending that because "intermediately positioned" was added by amendment, this term must have some special, highly restrictive definition other than its ordinary and customary meaning. *See BesTop's Opening Br.* at 10-11. That is not the case. *See Schoenhaus v. Genesco, Inc.*, 440 F.3d 1354, 1358 (Fed. Cir. 2006) (term "rigid" added through examiner's amendment given ordinary and customary definition). All claim language, whether originally filed or amended, is entitled to its ordinary and customary definition absent a clear and unambiguous redefinition or disavowal of claim scope by the applicant. *See id.* at 1358.

Moreover, the ordinary and customary definition of "intermediate" offered by Webasto shows that no special redefinition of that term was required to traverse the cited prior art references. *Webasto's Opening Br.* at 12 (ECF No. 49). An ordinary dictionary definition of "intermediate" is "being, situated, or acting ***between two points***, stages, things, persons, etc." *Intermediate*, Dictionary.comhttp://www.dictionary.com/browse/intermediate (retrieved Nov. 29, 2017). As BesTop admits, the prior art the examiner shows coupling rods connected ***at the end points*** of the tensioning bows. *BesTop's Opening Br.* at 12. Consistent with the prior art

and Webasto's definition, the hinge points would be "intermediate" so long as they were connected to the tensioning bows *other than at the end points*. No statements in the prosecution history by either the applicant or the examiner supports BesTop's proposed construction.

BesTop's construction is also inconsistent with the specification. BesTop cites to Figure 10 of the '342 Patent, which clearly shows that the coupling rod is connected to the main tensioning bow towards the base of the tensioning bow, substantially away from the midpoint.



*'342 Patent, FIG. 10 as reproduced in*
*BesTop's Opening Brief at 14.*

BesTop's proposed construction would read this preferred embodiment out of the claims, because the coupling rod is not connected to the main tensioning bow "in the middle" of the tensioning bow. *Vitronics Corp. v.*

*Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (A construction that would exclude a preferred embodiment "is rarely, if ever, correct. . . ."). Such a construction is "strongly disfavored." *Pandrol USA v. Airboss Ry. Prod., Inc.*, 10 F. App'x 837, 842 (Fed. Cir. 2001).

BesTop's remaining citations to the specification do not alter the ordinary meaning of any terms. BesTop cites the claim language requiring the tensioning bows to be connected to the coupling rods "via intermediately positioned hinge points" but fails to explain how the claim usage supports any deviation from the plain meaning. *BesTop's Opening Br*. at 13 (citing '342 Patent, col. 7 ll. 21-23). BesTop also cites to lines 25-31 in column 5 of the '342 Patent, which does not support BesTop's argument. This passage does no more than explain that the tensioning bows are connected to a "coupling link" at hinge points. *BesTop's Opening Br*. at 14; '342 Patent, col. 5 ll. 25-31.

BesTop cannot point to any language in the claims, the specification or the prosecution history requiring the coupling rod to be placed in the ***middle*** of the tensioning bows. The word "middle" never appears in the '342 Patent, or the prosecution history in any context. *See generally* '342 Patent. BesTop's proposed construction is a litigation-driven attempt to read its own Accused Product out of the claims. *See BesTop's Statement* at 2-3,

(ECF No. 49-3); *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1330-31 (Fed. Cir. 2006) ("This court, of course repeats its rule that 'claims may not be construed with reference to the accused device.'").  BesTop's construction should be rejected, and the Court should construe "intermediately positioned" consistent with the ordinary meaning of the claim term."

2.      Bestop's position

**"A 'coupling rod' is required.**

**'Hinge points' for a 'coupling rod' must be disposed in the middle of the side legs of the tensioning bow and in the middle of the side legs of the auxiliary tensioning bow. The 'hinge points' for the 'coupling rod' are not disposed at or near the upper ends of any auxiliary tensioning bow or main tensioning bow."**

Bestop's arguments, duplicated below, are taken from its Responsive brief. (*See also*, Hearing Slides 2 to 17.)

**"B.     Disputed Claim Terms**

**1.     Claim 1: "The Coupling Rod Being Articulated to the Auxiliary Tensioning Bow and to the Main Tensioning Bow via Intermediately Positioned Hinge Points"**

Webasto concedes that this disputed claim term requires a "coupling rod" and "hinge points."  (Doc. 49 at 16, Pg ID 1126).  Accordingly, the only dispute in interpretation the claim is *where* the hinge points of the

coupling rod must be disposed.  As explained in Bestop's opening brief, the

parties propose the following constructions:

| Bestop's Proposed Construction | Webasto's Proposed Construction |
| --- | --- |
| A "coupling rod" is required.<br><br>"Hinge points" for a coupling rod must be disposed in the middle of the side legs of the tensioning bow and in the middle of the side legs of the auxiliary tensioning bow | Ordinary and customary meaning; no construction required.<br><br>Alternatively:<br><br>The coupling rod is connected to the auxiliary tensioning bow and the main tensioning bow at hinge points between the end points of the bows. |

Despite now pushing for an "ordinary and customary" meaning of the

disputed phrase, Webasto disavowed any other meaning than the one

proposed by Bestop during prosecution of the application of the patent-in-

suit. Webasto is seeking to assert an expanded scope of the disputed phrase

contrary to the prosecution history.

As Bestop's opening brief makes clear, during prosecution of the

patent-in-suit, Webasto disavowed any other meaning of "hinge points"

except one that requires the hinge points to be disposed on ***both*** in the

middle of the side legs of the tensioning bow ***and*** in the middle of the side

legs of the auxiliary tensioning bow.  Claim 1 states, in relevant part, that

"the tensioning bow, in relation to a vertical longitudinal center plane on the

roof, is on each of its two sides connected to the auxiliary tensioning bow

via a coupling rod, the coupling rod being articulated to the auxiliary

tensioning bow via intermediately positioned hinge points."  **Ex. 1** to

Bestop's Opening Claim Construction Brief, Doc. 50-2, '342 Patent, at Col.

6, ln. 51-57.  In discussing amendments to Claim 1 of the '342 Patent,

Webasto and the patent examiner discussed references to the prior art,

including Garner et al., Chammings et al., and Yamaji and Huotari et al.  **Ex.**

**2** to Bestop's Opening Claim Construction Brief, Doc. 50-3, Examiner-

Initiated Interview Summary, at BEST000119.

To this end, in the Notice of Allowability of the amendment to the

'342 Patent, the examiner required insertion of the phrase "intermediately

positioned" before "hinge points."  **Ex. 3** to Bestop's Opening Claim

Construction Brief, Doc. 50-4, Notice of Allowability, at BEST000121.  The

examiner's amendment specifically distinguished the Huotari *et al.*

reference, U.S. Patent No. 8,186,740 ("the '740 Patent" which is owned by

Bestop) on the grounds that, unlike the '342 Patent, the device covered by

the '740 Patent has "auxiliary and tensioning bows pivotable to the frame

**but with the coupling rods 40, 52 articulated at upper ends of the**

**respective bows**." *Id*. at BEST000122 (emphasis added; i.e., Huotari was different and did not have intermediately positioned hinge points because Huotari (Bestop) has hinge points at the upper ends of the side legs).

Webasto concedes that the term "intermediately positioned" was added to Claim 1 by the examiner to distinguish the '342 Patent from the prior art.  (Doc. 49 at 17, Pg ID 1127).  And, as explained in Bestop's Opening Brief and above, the prior art had hinge points articulated at the upper ends of the respective bows.  (Doc. 50 at 18-19, Pg ID 1216-17).  Webasto argues, however, that the examiner's addition of the term "intermediately positioned" to define over the prior art is essentially meaningless. (*Id*.).  Webasto completely ignores that, in the Notice of Allowability, the patent examiner described the "substance of the interview" with the Applicant [Webasto] as, "Applicant agreed to an examiner's amendment to define over any of the above references." Ex. 2 to Bestop's Opening Claim Construction Brief, Doc. 50-3, Examiner-Initiated Interview Summary, at BEST000119.  In other words, Webasto agreed to define over the prior art by requiring the '342 Patent to have "intermediately positioned" hinge points; i.e., hinge points disposed on **both** in the middle of the side legs of the tensioning bow **and** in the middle of the side legs of the auxiliary

tensioning bow.  Webasto's current attempt to escape the prosecution history lacks merit.

Webasto is now estopped from seeking claim construction that contradicts "representations [Webasto made] about claim language during prosecution to avoid prior art. . . ." *Wi-LAN USA, Inc.*, 830 F.3d at 1390. Indeed, Webasto cannot "escape these representations when trying to show infringement." *Id. See, also Omega Eng'g Inc.*, 334 F.3d at 1324 (finding disavowal where patentee did not amend claim in response to rejection, but instead attempted to overcome the prior art by preferring a narrower meaning for disputed term); *see also Flexsys*, 695 F. Supp. 2d at 614.

Webasto also argues that Bestop's construction of Claim 1 would "exclude the preferred embodiment" of the '342 Patent [Doc. 49 at 18, Pg ID 1128], but the opposite is true.  First, the '342 Patent, at col. 7, lines 21-23, identifies "the coupling rod being articulated to the auxiliary tensioning bow and to the main tensioning bow via *intermediately positioned hinge points*" in all of the descriptions and drawings.  **Ex. 1** to Bestop's Opening Claim Construction Brief, Doc. 50-2, '342 Patent, at col. 7, lines 21-23 (emphasis added).  The actual language used by Webasto in the patent, as well as Webasto's detailed description in the preferred embodiment of the patent-in-suit, supports Bestop's construction of the location of the hinge points.

Second, the Figures of the '342 Patent, such as Figure 10 of the '342 Patent, makes clear that the hinge points are disposed on **both** in the middle of the side legs of the tensioning bow **and** in the middle of the side legs of the auxiliary tensioning bow.  **Ex. 1** to Bestop's Opening Claim Construction Brief, Doc. 50-2, '342 Patent, at Fig. 10 (red circles added to show hinge points).  Webasto ignores Figure 10, as well as the language used in the patent and in preferred embodiment.

Webasto unfairly accuses Bestop of "litigation-driven construction" [Doc. 49 at 19, Pg ID 1129] when it is Webasto that is seeking to erase the prosecution history and forget about its own language used in the patent and preferred embodiment.  Webasto has (1) disavowed the construction it now seeks by explicitly defining over the prior art; and (2) defined the disputed term in the specification and detailed description of the preferred embodiment contrary to its "ordinary and customary meaning" argument. Webasto's litigation-driven construction must be rejected."

3.    <u>Special Master's Analysis and Recommendation</u>

a.  <u>Analysis</u>

The key legal rule that controls not only the limitation at issue, but all of the terms in dispute, is found in Webasto's briefs and Slide 17:

"[T]he words of a claim are generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art…at the time of the invention."

(*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed.Cir. 2005) (en banc)

Webasto emphasizes the point that claim limitations are generally given their ordinary and customary meaning. Their briefs and oral argument, supported by their slides, present a clear and convincing case in favor of their proposed construction. The Special Master is in agreement with their analysis of the facts and  law and agrees with their conclusion that no construction is necessary. Webasto never "expressed an intent to redefine the term or deviate from the ordinary meaning of the terms." (*See, Thorner v Sony Computer Entmn't Am.* LLC, 669 F.3d 1362 (Fed. Cir. 2102)

Although Webasto does not argue this point, in claims construction it is also important to stress the second part of the *Phillips* rule – it is the meaning that a term would have to a person of ordinary skill in the art, not the general public or to a jury, that matters. This rule makes good sense as it is normally those in the same field of work as the invention, who would need

to understand the scope claims of a patent. For example, a competitor in the field of the invention would need this information to insure their products do not infringe or to assist in a design around, etc.

Bestop is a competitor of Webasto and surely employs those skilled in the art of the '342 patent to work on its competing products and/or retains patent attorneys who are also skilled in the art. In any case, Bestop's own pleadings acknowledge that most of the disputed terms, other than the one under consideration, are understood by persons skilled in the art and confirm that no construction is needed:

"The Haberkamp prior art reference cited for this element in the '342 Patent prosecution history is a Bestop product. The accused instrumentality has the same components as to this feature."

(Amended Non-Infringement Contentions at 5-6)

Any person skilled in the art that Bestop would rely on for advice as to the meaning of the limitations in the '342 patent, could not, and would not, make these statements without a very clear understanding of the "ordinary and customary meaning" of the terms.  Indeed, according to Mr. Sadowski:

"It was a 102 invalidity reference,

except for the fact that they added the last element of the

claim. And what I'm saying is that **however we interpret it,**

it's still going to be a 102 reference except for the last

element of the claim.

(*Transcript* p.12 at line 25 to p.13, line 4) (emphasis added.)

Although Mr. Sadowski was directing his remarks to the first sentence above, the statement applies equally as well to the second sentence. Thus, Bestop is saying that no matter how these particular limitations are interpreted, it understands the meaning of the claim terms well enough to contend that the limitation is in the prior art and to admit that the limitation is found in its products. Since the person skilled in the art employed by Bestop could readily understand the meaning of the multiple limitations referenced above, he/she would surely also understand the meaning of "*intermediately positioned*". The foregoing analysis provides further support for the fact that all of the claim limitations should be given their ordinary and customary meaning, i.e., the terms do not require any construction for a person of skill in the relevant art!

As to the terms **"intermediately positioned",** Bestop doesn't contend that this limitation is found in the Haberkamp prior art. Without this prior art reference, however, Bestop is forced to argue for a severely narrow

construction for **"intermediately positioned"**, in an obvious effort to try to put its products outside the scope of claims 1 and 6 of the '342 patent:

> "A 'coupling rod' is required. 'Hinge Points' for a 'coupling rod' must be disposed in the **middle of the side legs** of the tensioning bow and in **the middle of the side legs** of the auxiliary tensioning bow." (emphasis added.)

Bestop does not offer a shred of credible evidence in support of its proposed construction. In its briefs and at the hearing, Bestop relies on convoluted interpretations of the file history despite the fact that the terms suggested by Bestop are never used in the file history. And, as Webasto noted at the *Markman* hearing:

> "the patent itself never uses the word 'in the middle.' There's no example in the patent that shows that all of the linkages are in the middle itself."

Further, Bestop's disavowal arguments are once again completely misplaced.  The only disavowal by Webasto was its agreement to the added limitation which reduced the broader scope of the claim language. Thereafter, the only issue was the meaning of the added limitations. Also, as Webasto accurately points out, the citation to the specification and in particular Figure 10, supports Webasto's interpretation, not Bestops.

Finally, the Patent Office Examiner could have required the limitation to include the terms "in the middle". He did not. When Mr. Sadoski was questioned at the hearing on this point, the following exchange occurred:

THE SPECIAL MASTER: You've got your definitions in this document, right? This is the definitions you're pushing for? Middle, middle, middle, that's what you say.

MR. SADOWSKI: Yes.

THE SPECIAL MASTER: One has to wonder, why if the examiner thought it ought to be in the middle, why didn't he say in the middle? Why didn't he give them the narrow, very narrow construction that you're now asking for? He gave them -- narrowed the claim clearly away from the end points, but he didn't narrow it down to the middle by the language he used when he could have used very specific language like that. So why didn't he? If he agrees with you that it ought to be in the middle, why wouldn't he have said so, so there's no issue?

MR. SADOWSKI: I think he agrees with me that it's not articulated at the upper ends of the respective bows. How to define positively I say is more problematical, whether it's in the middle or midpoint or something else. Like I said, you

know, if you're willing to come to a conclusion of negative

claiming as not articulated at the outer ends of the respective

bows, I'm fine with that. But I tried to --

THE SPECIAL MASTER: But you didn't ask for that

definition.

MR. SADOWSKI: I -- I did ask for the definition in my briefing.

THE SPECIAL MASTER: This is your document here [referring to

the Joint Statement which contains both parties proposed

construction] that

sets forth your claims for the construction.

MR. SADOWSKI: Well, I guess -- I've never experienced

claim construction as a baseball arbitration --

THE SPECIAL MASTER: No, it's not. You're supposed to

take your position and stick with it.

MR. SADOWSKI: Well, that's a baseball arbitration.

I've had several of these where we communicate and express our

positions. I mean, clearly their position is not accurate

either, because their position would include Huotari.

THE SPECIAL MASTER: How so?

MR. SADOWSKI: Because their position is saying

intermediate between the two hinge points which would include

the two hinge points of Huotari.

THE SPECIAL MASTER: Okay. That's your argument.

MR. SADOWSKI: No, that's the truth. I mean --

THE SPECIAL MASTER: Okay. All right. What's your

next point?

(*Transcript*, pages 35,36]

Mr. Sadowki's arguments do not in any wise support the construction

proposed in Bestop's pleadings. Indeed, he offers no valid argument to rebut

Webasto's well-reasoned arguments. Instead, Mr. Sadowski, obviously

recognizing that a "middle" limitation will never pass muster, seems to be

urging that the Court should come up with an alternative definition that is

consistent with his arguments. He also commented that claim construction

should not be like "baseball arbitration", but of course it is not. The Court is

always free to come up with a construction that has not been suggested by

the parties. In this case, however, the evidence fairly shouts that no

alternative to Webasco's  proposed "no construction" , is needed.

## 2.  Recommendation

The terms **"intermediately positioned"** require **no construction** for a person of skill in the art. The Special Master recommends that the Court so find.[1]

## B.    OTHER TERMS IN DISPUTE

For the reasons provided earlier, it is the Special Master' conclusion that no claim construction is required for any of the remaining limitations at issue.  Nevertheless, out of an abundance of caution, the following section of this Report will provide the parties proposed constructions, their arguments and the Special Master's analysis and recommendations for these terms.  In brief, this analysis supports the Special Master's conclusion that none of so called "disputed" terms require a construction.

### Term 2: *"Interchangeable Insert"*

These terms are included in both claims 1 and 6 of the '342 patent, but the parties focus is on Claim 6:

---

[1] If the Court later determines that a lay definition, taken from the dictionary, might aide the jury in better understanding the limitation, the alternative definition suggested by Webasto is a good one: "The coupling rod is connected to the auxiliary tensioning bow and the main tensioning bow at hinge points between the end points of the bows."

"A roof opening mechanism, being designed as an interchangeable insert, for unlockable fixation at a roof structure of a vehicle roof, and comprising:"

        a.      Parties Positions

            (i)      Webasto's Proposed Construction and Arguments

**No construction required. Terms should be given ordinary and customary meaning.**

Webasto's arguments are summarized in their Responsive Brief, included herein, and its hearing slides and oral argument:

[Paula: put pages 10 to top of p.12 of Webasto's Responsive Br. here]

Webasto contends that the term "interchangeable insert" has an ordinary meaning consistent with dictionary definitions of "interchangeable" as "capable of replacing or changing places with something else." Interchangeable, DICTIONARY.COM, http://www.dictionary.com/browse/interchangeable (retrieved Nov. 30, 2017). BesTop's proposed construction for "interchangeable insert" is not supported by the intrinsic evidence, and BesTop points to no case law that justifies

converting a capability of the invention into additional structural limitations.

A patentee may use functional language to describe the capabilities of an invention or claim limitation. *UltimatePointer, L.L.C. v. Nintendo Co.*, 816 F.3d 816, 826-27 (Fed. Cir. 2016) (patentee may claim an "image sensor capable of generating data" because it "reflect[s] the capability of the claimed apparatus");, 520 *Microprocessor Enhancement Corp. v. Texas Instruments Inc.* F.3d 1367, 1375 (Fed. Cir. 2008) (claim may properly use functional language to describe a "recited structure [that is] capable of performing the recited functions").

The fact that an apparatus has a particular capability does not transform the capability into a new structure. An image sensor capable of generating data is not converted into a new structure of "generated data." *See Ultimate Pointer*, 816 F.3d at 826-27. A system with the "capability to receive and respond to user selection" does not require that a user selection *actually be received and responded to* in order to practice the claim. *See MasterMine Software, Inc. v. Microsoft Corp.*, 874 F.3d

1307, 1316 (Fed. Cir. 2017). A claim directed to a structure with capabilities is still directed to *a structure*, and cannot be rewritten to read in additional structures, methods or processes. *See id*.

The portions of the specification quoted by BesTop support Webasto's ordinary and customary construction of "interchangeable insert." The specification states that, "as an alternative to the rigid roof element . . . a roof opening mechanism [], being designed as an interchangeable insert . . . can be fixed to the roof structure. . . ." '324 Patent, col. 4 ll. 23-26. In other words, the claimed roof opening mechanism is "capable of replacing" another roof structure, which is not claimed as part of the invention. *See id*.

There is no basis for reading an unclaimed roof structure into the claims. The specification may be used to "interpret what the patentee meant by a word or phrase in the claim. *E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1433 (Fed. Cir. 1988). "But this is not to be confused with adding an extraneous limitation appearing in the specification, which is improper." *Id*. (Extraneous means "a

limitation read into a claim from the specification wholly apart

from any need to interpret what the patentee meant by particular

words or phrases in the claim.").  BesTop's construction, which

seeks to add not just one but "two alternatives" into a claim that

does not require any, is improper.

(Webasto's Responsive Br., pages 10-12) (*See also*, Hearing slides 34-37;
Transcript pages 41,44-46.

> (ii)   Bestop's Proposed Construction and
>          Arguments

**Interchangeable insert must mean that it has more than one piece because the insert must interchange with another insert; as such, the term must mean that "at least two inserts" must be supplied in order to infringe this element of the claim**.

Bestop's arguments are summarized in their Responsive Brief and

hearing slides and oral argument:

The parties also dispute the construction of the term

"interchangeable insert," each time it appears in Claim 1 and

Dependent Claim 6.

Initially, Webasto argues that this term should not be

construed by the Court because Bestop has not set forth a non-

infringement defense based on the construction of this term.

However, Bestop identified "interchangeable insert" as disputed

in the listing of claim terms in dispute and indicated it as not

infringed in Noninfringement Contentions.  *See* **Ex. 6**, Bestop's

Statement of Claim Terms to be Construed at pp. 1, 4; **Ex. 7**,

Bestop's Am. Resp. to Infringement Contentions, at pp. 3-20;

**Ex. 8**, Bestop's Resp. to Infringement Contentions. And, as

explained, Bestop will have another opportunity to define its

contentions after the Court construes the meaning of

"interchangeable insert."  Accordingly, Webasto's argument

that "interchangeable insert" should not be construed must be

rejected.

As explained in Bestop's opening brief, the parties

propose the following construction of "interchangeable insert":

| **Bestop's Proposed Construction** | **Webasto's Proposed Construction** |
|---|---|
| "Interchangeable insert" must mean that it has more structure than just one piece because the insert must interchange with another insert; as such, the term must mean that "at least two inserts" must be supplied in order to infringe this element of the claim. | Ordinary and customary meaning; no construction required.<br><br>Alternatively:<br><br>An insert that is capable of being substituted another insert. |

Webasto argues that Bestop attempts to rewrite the word

"interchangeable" with "interchanged."  (Doc. 49 at 20, Pg ID

1130).  Webasto also argues that "[t]he claims recite a single structure – a roof opening mechanism – that is interchangeable."  (*Id*.).  However, Webasto ignores the detailed description of the preferred embodiment, which unequivocally supports Bestop's construction that "interchangeable insert" must mean that there are "at least two inserts."  The detailed description states, in pertinent part:

> The rigid roof element **26** is secured in its installed position being illustrated in FIG. **1** by handle screws, two of which in each instance reach through the longitudinal roof beams **22** from below and two of which reach through the rear fixed-roof portion **18** from below, said handle screws reaching into a corresponding screw thread of the rigid roof element **26** from below.  In addition, the rigid roof element **26** is fixed to the front apron **16** by suitable closing lugs.
>
> As it can be taken from FIGS. **2** to **7**, the roof opening **14** can, as an alternative to the rigid roof element **26**, be provided with a roof opening mechanism **28**, being designed as an interchangeable insert, which, as it can be taken from FIGS. **16** to **18**, can be fixed to the roof structure by several handle screws **30**.  The handle screws **30** are manually unlockable fixation elements, which reach through the roof structure from below and reach into corresponding screw threads of the roof opening mechanism **28** from below.  The handle screws **30** correspondent to the handle screws by which the rigid roof element **26** is secured in its installed position.

**Ex. 1** to Bestop's Opening Claim Construction Brief, Doc. 50-2, '342 Patent, at Col. 4, lines 14-32.

As can be gleaned from Webasto's own description, the "interchangeable insert" that acts as the "roof opening mechanism," requires more than one structure to be able to "interchange" with another insert.  The specification itself indicates that at least two alternatives must be included here to be "interchangeable," and to be within the scope of the claim as written.  Bestop's proposed construction is the only logical choice and should be adopted here.  Webasto's arguments lack merit.

(Bestop's Responsive Br. pages 11-13; Slides 18-22; Transcript pages 44,45)

b.      Special Master's Analysis and Recommendations

Here again, Webasto's position is supported by the facts and law and its analysis is adopted in whole by the Special Master. Any cursory review of the '342 patent by a person skilled in the art would lead to only one conclusion—Bestop's proposed construction is without merit. First, its proposed construction is more argument that construction and furthermore, the sections of the specification cited by Bestop actually prove the correctness of Webasto's arguments. For example, Bestop cites the following from the specification:

"As it can be taken from FIGS. 2 TO 7, the roof opening

**14** can, as an alternative to the rigid roof element **26**, be provide

with a roof opening mechanism 28, being designed as an

interchangeable insert…"

('342 patent, col.4, lines 22 to 25 and quoted in full in Bestop's response above)

This teaching from the specification is consistent throughout the patent, making it very clear that the roof opening mechanism of the invention is an insert that can be placed in the roof opening of the vehicle as an alternative to the rigid roof structure-i.e., the patented insert is interchangeable with the rigid roof. The patent never suggests, as Bestop posits, that the interchange is between two separate inserts. Bestop's arguments are vacuous at best and should be disregarded.

In light of the foregoing, it is the Special Master's recommendation that the Court find that **no construction** is required for **Term 2: interchangeable insert**.

### Term 3. "At least one tensioning bow fixedly pivotal"

### Term 4: "Fixedly pivotal"

a.    Parties Positions

(i)     Webasto's Proposed Construction and
Arguments

**No construction required as to any of these terms. Terms
should be given ordinary and customary meaning.**

Webasto's arguments are summarized in their Responsive Brief,
included herein, and its hearing slides and oral argument:

BesTop's Opening Brief confirms that the only reason it

seeks to separately construe the terms "by at least one

tensioning bow fixedly pivotal with respect to the base frame"

and "fixedly pivotal" is to read multiple limitations from the

specification into the claims.  The specification does not

redefine or limit the plain meaning of the claims absent a "clear

and unambiguous" redefinition or disavowal of claim scope.

*Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366,

1377 (Fed. Cir. 2008).

Bedrock claim construction law states that it is improper

to read limitations from the specification into the claims.

*Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287 (Fed. Cir.

2010) ("Construing the claims in light of the specification does

not, however, imply that limitations discussed in the

specification may be read into the claims."); *Liebel–Flarsheim*

*Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004) ("[I]t is improper to read a limitation from the specification into the claims."); *Sjolund v. Musland, Norsol, Inc. and Wink Corp.*, 847 F.2d 1573, 1582 (Fed. Cir. 1988) ("limitations from the specification are not to be read into the claims"). It is not enough "that the only embodiments, or all of the embodiments, contain a particular limitation." *Thorner v. Sony Computer Entmn't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

**"[The Court] do[es] not read limitations from the specification into claims; [it] do[es] not redefine words.** Only the patentee can do that. To constitute disclaimer, there must be a clear and unmistakable disclaimer." *Id*. at 1366–67.

BesTop errs by arguing that a description of a preferred embodiment constitutes a redefinition. *BesTop's Opening Br.* at 16-17. The specification will almost always include a more detailed description of embodiments than are set forth in the claims. *Cf. Rhine v. Casio, Inc.*, 183 F.3d 1342, 1346 (Fed. Cir. 1999) (claims may be broader than the "particular embodiments appearing in the specification"). But unless and until the patentee unambiguously states that a claim term has a certain

definition, or necessarily does or does not require specific features, the ordinary and customary meaning controls. *Thorner*, 669 F.3d at 1367-68.

With respect to the term "fixedly pivotal," BesTop misrepresents Webasto's position by alleging that Webasto had not provided a construction for that term. *BesTop's Opening Br.* at 18. Webasto stated that this term should have its ordinary and customary meaning, and even provided an alternate construction to the extent the plain meaning required clarification. *Webasto's Statement*, Ex. A at 3, Carnevale Decl. Ex. A.

BesTop incorrectly argues that because the term "fixedly" was added by amendment, the claim is somehow limited to the specific embodiment set forth in Figure 10. *BesTop's Opening Br*. at 19. This is the same argument BesTop presented with respect to the term "intermediately positioned," and it fails for the same reasons. *Supra* Part I. Claim language added by amendment is still given its ordinary and customary meaning absent a clear and unmistakable disavowal of claim scope ***by the applicant, not the examiner***.

*See, e.g., Salazar*, 414 F.3d at 1347; *Schwing*, 305 F.3d at 1324-25.  Here, the prosecution history never mentions Figure 10 of the '342 Patent.  *See generally Notice of Allowability*.  There is no support for BesTop's position that the addition of the word "fixedly" to the claims somehow narrows the claim scope to the specific embodiment depicted in Figure 10.  *BesTop's Opening Br.* at 19.

BesTop's constructions for "fixedly pivotal" and "by at least one tensioning bow fixedly pivotal with respect to the base frame" improperly attempt to limit the claims to certain preferred embodiments in the specification, without any express redefinition or disclaimer of claim scope by the patentee.  BesTop's constructions should be rejected, and the Court should hold that both terms have an ordinary and customary definition that is readily understood.

(*Webasto's Responsive Br.*, pages 12-14. *See also*, Hearing Slides 41-47; Transcript pages 47-51)

(ii)  Bestop's Proposed Construction and Arguments

**Term 3: "at least one tensioning bow" is fixed to the base frame at two hinge points via side legs.**

**Term 4: "an auxiliary tensioning bow" is fixed to the base frame at two hinge points via side legs.**

Bestop's arguments in support of these constructions are summarized in its Responsive Brief, included herein, its hearing sides and oral argument.

Like "interchangeable insert" Webasto argues that this term should not be construed by the Court because Bestop has not set forth a non-infringement defense based on the construction of this term.  Again, Bestop identified this disputed term in the listing of claim terms in dispute and indicated it as not infringed in Noninfringement Contentions.  *See* **Ex. 6**, Bestop's Statement of Claim Terms to be Construed at pp. 2-3; **Ex. 7**, Bestop's Am. Resp. to Infringement Contentions, at pp. 3-20; *Ex. 8*, Bestop's Resp. to Infringement Contentions.

The parties propose the following construction of "by at least one tensioning bow fixedly pivotable with respect to the base frame":

| **Bestop's Proposed Construction** | **Webasto's Proposed Construction** |
|---|---|
| "at least one tensioning bow" is fixed to the base frame at two hinge points via side legs. | Ordinary and customary meaning; no construction required. Alternatively: |

|  | At least one tensioning bow capable of pivoting with respect to a fixed point on the base frame. |
|---|---|

The parties also dispute the construction of the term "fixedly pivotal," although Webasto has not proposed its own construction of the term:

| **Bestop's Proposed Construction** | **Webasto's Proposed Construction** |
|---|---|
| "an auxiliary tensioning bow" is fixed to the base frame at two hinge points via side legs | None provided |

Webasto concedes that, courts that have considered a construction for terms such as "fixedly attached" or "fixedly connected," "such terms are generally understood to mean that the structure is set at a particular location." (Doc. 49 at 22, Pg ID 1132). This is exactly the construction proposed by Bestop, which is also supported by Webasto's own detailed definition in the '342 Patent. Moreover, Webasto concedes that Bestop's construction reads limitations into the claim from the specification, but incredibly faults Bestop for doing so. (*Id*. at 48, Pg ID 1132). As explained, it is the specification that is the single best guide to interpreting claim scope. *Teleflex, Inc.*, 299

53

F.3d at 1324-25; *Advanced Aerospace Techs., Inc*., 122 Fed. Cl. at 465; *Biogen Idec, Inc*., 713 F.3d at 1094; *Phillips*, 415 F.3d at 1312-17; *Power Integrations, Inc*., 711 F.3d at 1360; *Trustees of Columbia Univ. in City of N.Y*., 811 F.3d at 1362-63. Webasto asks the Court to ignore this intrinsic evidence.

In the description of the preferred embodiment, Webasto explained that, "[t]he roof opening mechanism **28** comprises a main tensioning bow **58**, which is designed so as to be substantially U-shaped *and which is articulated to the longitudinal legs **34** of the base frame **32** by its free legs **60** via hinge points **62**.*" **Ex. 1** to Bestop's Opening Claim Construction Brief, Doc. 50-2, '342 Patent, at col. 5, lines 14-17 (emphasis added). The Webasto definition embedded in the '342 Patent specification (as opposed to what Webasto is seeking now) is supported by the drawings used in the patent-in-suit. Figure 10 shows the main tensioning bow (58) fixed to the base frame (32) at two hinge points (62) via side legs (60):



**Ex. 1** to Bestop's Opening Claim Construction Brief, Doc. 50-2, '342 Patent, Fig. 10 (blue highlighting added to show main tensioning bow; red circles added to show hinge points; and yellow highlighting added to show side legs).  Indeed, the drawings also show the hinge points at the base frame via side legs:



**Ex. 1** to Bestop's Opening Claim Construction Brief, Doc. 50-2, '342 Patent, Fig. 10 (red circles added to show hinge points at base frame).  Accordingly, the intrinsic evidence supports Bestop's construction that "an auxiliary tensioning bow" is

55

fixed to the base frame at two hinge points via side legs.

*Phillips*, 415 F.3d at 1315-16; *Trustees of Columbia Univ. in City of N.Y.*, 811 F.3d at 1364.

Moreover, Webasto fails to explain that, in response to the rejection of the claims by the patent examiner, "fixedly" was inserted before pivotable, and "a pivotable auxiliary tensioning bow" was changed to "an auxiliary tensioning bow fixedly pivotal to the base frame."  **Ex. 3** to Bestop's Opening Claim Construction Brief, Doc. 50-4, Notice of Allowability, at BEST000121.  As explained, Webasto did not challenge the examiner's Notice of Allowability, and instead explicitly agreed to it as defining over the prior art references.  *See* **Ex. 2** to Bestop's Opening Claim Construction Brief, Doc. 50-3.  Accordingly, Webasto disavowed any construction other than one that requires "an auxiliary tensioning bow" to be fixed at the base frame at two hinge points via side legs, as depicted in Figure 10.  I., 334 F.3d at 1323.

(*Bestop's Responsive Br*. pages 13-17; Hearing slides 23-26; Transcript pages 52-54)

b.    Special Masters Analysis and Recommendations

The relevant teachings from patent specifications leave no doubt as to the terms meaning. (*See* Webasto slides 41 and 42).  It doesn't take a person of skill in the art to understand, in light of these teachings, that the tensioning bow pivots with respect to a fixed point on the base frame.  As noted by Webasto, the terms were added during prosecution to avoid the prior art which disclosed a tensioning bow that was "slidable" (vs. fixed) to the frame. (*See* Webasto slide 43).  Fixed means fixed and nothing more.

Bestop's proposed construction and arguments in support, are classic examples of what the Federal Circuit has repeatedly warned against—reading limitations into the claim terms from the specification or limiting the claims to a preferred embodiment. (*See Kara Tech, Inc. v. Stamps,com Inc.*, 582 F.3d 1341, 1345, 1348 (Fed.Cir. 2009); Webasto slide 47).  In particular, Bestop seeks to add "two hinge points" to the claim limitations which are not suggested by the claim language.  To do otherwise would improperly change the meaning and scope of the limitation.

Finally, Bestop once again attempts to turn the addition of the terms to avoid the prior art into a disavowal that somehow give the terms the meaning suggested by Bestop.  As noted earlier, the only disavowal was the addition of the terms under review to avoid the prior art which disclosed a

"slidable" bow.  Just as with the addition of the terms "intermediately positioned" (discussed at length above), the added limitation here must be treated like any other limitation in the claims.  The Court must simply review the added terms and determine if construction is required.[2]

The Special Master agrees with Webasto and recommends that the Court find that **no construction is required for claim terms 3 and 4**.

**Term 5: "Fixation Elements Being Manually Unlockable"**

        a.      Parties Positions

             (i)      Webasto's Proposed Construction and Arguments

**No construction required as to any of these terms. Terms should be given ordinary and customary meaning.**

---

[2] At the Markman hearing Mr. Sadowski, over objection from Webasto, gave the Court copies of what appear to be pages from a deposition which he asserted supported his position. The hearing was not an evidentiary hearing, and even if it had been, there was no foundation for admission of the pages without the complete deposition, etc. Consequently, the pages were not give any consideration by the Special Master.

Webasto's arguments are summarized in their Responsive Brief, included herein, and its hearing slides and oral argument:

BesTop's construction of the claim terms "adjacent to" and "secured at" ignores the ordinary and customary meaning of these terms and impermissibly attempts to narrow the claims to a preferred embodiment.  BesTop's proposed construction should be rejected for the reasons set forth above.  *Supra* Part II.B-II.C.  Other courts typically give "adjacent to" or "secured at" simple or plain meaning definitions.

Neither "adjacent to" nor "secured at" are technical terms requiring an elaborate definition.  *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) ("[Non]technical terms of art . . . do not require an elaborate interpretation.").  The Court is not required to issue a construction where the alleged disputed claim language is "comprised of commonly used terms; each [] used in common parlance and ha[ving] no special meaning in the art."  *Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1291 (Fed. Cir. 2015) (district court did not err in declining to construe "being provided to").

Other courts that have attempted to construe these terms typically find no construction is required, or apply simple definitions.  *See, e.g., Geodynamics, Inc. v. Dynaenergetics US, Inc.*, No. 2:15-CV-1546-RSP, 2016 WL 6217181, at *6 (E.D. Tex. Oct. 25, 2016) ("Adjacent to" is "unambiguous, and is easily understandable by a jury, and should be given its plain and ordinary meaning."); *Cree, Inc. v. SemiLEDs Corp.*, No. CIV.A. 10-866-RGA, 2012 WL 975697, at *8–9 (D. Del. Mar. 21, 2012) ("adjacent to" means "near or next to"); *Order, Deere & Co. v. Bush Hog LLC*, No. 3:09-cv-95-CRW-CFB, at *2 (D. Iowa Jan 25, 2011) (Carnevale Decl. Ex. B) ("being secured to" means "fastened or attached.").  "No detailed explanation is needed; those terms are readily understandable to a person learned in the art."  *Deere*, No. 3:09-cv-95 at *2.

Furthermore, while BesTop argues that the '342 Patent specifically defined "secured at," the portions of the specification relied on by BesTop never actually use the word "secured."  *BesTop's Opening Br.* at 24 (quoting '342 Patent, col. 5 ll. 18-24).  BesTop cannot reasonably argue that the patentee "clearly and unambiguously" redefined the term

"secured at" in a portion of the specification that never uses the

word "secured," much less provides a definition for it.

BesTop's attempts to rewrite the claim language should

be rejected, and the Court should find that "adjacent to" and

"secured at" are common, non-technical terms that require no

construction and are easily understood according to their

ordinary and customary definitions.

(*Webasto's Responsive Br.*, pages 16-18. See also, Hearing Slides 48-54; Transcript pages 47-51).

(ii)   Bestop's Proposed Construction and Arguments

**"Manually unlockable" means all of the "fixation elements" are unlockable using your hands and not using a tool, and defined as "handle screws".**

As set forth in Bestop's opening brief, the parties propose

the following constructions of the phrase, "fixation elements

being manually unlockable":

| **Bestop's Proposed Construction** | **Webasto's Proposed Construction** |
|---|---|
| "Manually unlockable" means all of the "fixation elements" are unlockable using your hands and not using a tool, and defined as "handle screws." | Ordinary and customary meaning; no construction required.<br><br>Alternatively: |

|  | Fixation elements unlockable by hand or hand tools. |
|---|---|
|  |  |

Webasto's arguments in its opening brief attempt to attribute a "meaning" to the claim term [Doc. 50 at 26, Pg ID 1136], but Webasto does not cite anything in the specification to support any use of tools in the meaning of the disputed term. Webasto attempts here to add "hand tools" to the construction, where no reference to "hand tools" is found anywhere in the specification, drawings or the prosecution history.  Yet, several locations in the intrinsic evidence limit the term "manually unlockable" to mean that the "fixation elements" are unlockable using hands and *not* a tool.

As set forth in Bestop's opening brief, Webasto's detailed description of the preferred embodiment limits the construction of "manually lockable" to mean that all of the "fixation elements," i.e. "handle screws," are unlockable using your hands, and not a tool.  Specifically, Webasto's description explains:

> The rigid roof element **26** is secured in its installed position being illustrated in FIG. 1 by handle

> screws, two of which in each instance reach
> through the longitudinal roof beams **22** from below
> and two of which reach through the rear fixed-roof
> portion **18** from below, said handle screws
> reaching into a corresponding screw thread of the
> rigid roof element **26** from below.

**Ex. 1** to Bestop's Opening Claim Construction Brief, Doc. 50-

2, '342 Patent, col. 4, lines 14-20.  In addition, the description

explains:

> The handle screws **30** are manually unlockable
> fixation elements, which reach through the roof
> structure from below and reach into corresponding
> screw threads of the roof opening mechanism **28**
> from below.  The handle screws **30** correspondent
> to the handle screws by which the rigid roof
> element **26** is secured in its installed position.

*Id*. at col. 4, lines 27-32.

Webasto's detailed description embedded in the '342

Patent teaches that, to be "manually unlockable," the "fixation

elements" are capable of being unlocked with "handle screws,"

*i.e.* using your hands, not a tool.  Since Webasto defined

"manually unlockable" in this manner in the '342 Patent

specification, Defendants' now proposed construction of

"ordinary and customary" meaning must be rejected.  *Phillips*,

415 F.3d at 1315-16; *Trustees of Columbia Univ. in City of*

*N.Y.*, 811 F.3d at 1364.  Indeed, no court has ever adopted

"manually" to mean that a tool could be used.  *See, e.g.,*

*Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d 744 (Fed. Cir.

1987); *In Re Prinzler*, 97 F. 2d 102 (C.C.P.A. 1938); *Fellowes,*

*Inc. v. Michilin Prosperity Co., Ltd.*, No. 2:06-cv-289, 2006

WL 3746140 (E.D. Va. Dec. 15, 2006)(**Ex. 5** to Bestop's

Opening Claim Construction Brief, Doc. 50-6).

Moreover, even if Webasto's "ordinary and customary

meaning" were to prevail, the "ordinary and customary

meaning" of the word "manually" and "handle" must mean to

use the hands.  Manually means, "done, operated, worked, etc.,

**by the hand or hands**." *See*, "Manually,"

www.dictionary.com/browse/manually (emphasis added).  And

"handle" means "a part of a thing made **specifically to be**

**grasped or held by the hand**."  See, "Handle,"

www.dictionary.com/browse/handle (emphasis added).

Accordingly, the '342 Patent specification makes clear that the

"part of a thing made specifically to be grasped or held by the

hand" [handle screws] are "done, operated, worked, etc. by the

hand or hands" [manually unlockable].  Webasto's contrary

position lacks merit and is unsupported by the intrinsic

evidence.

(*Bestop's Responsive Br*. pages 18-20; Hearing slides 23-26; Transcript
pages 52-54)

> b.      Special Masters Analysis and Recommendations

The focus here is on dependent claim 3:

> "The vehicle roof according to claim 1, wherein the base frame
is attached to the roof structure via **fixation elements being manually
unlockable"**.

The parties agree the terms "manually unlockable" requires the use of

hands, but dispute whether a person skilled in the art would understand that

this means that no tools can be used to unlock the structure. In the context of

the patent, common sense dictates that since "manually" means one must use

one's hands, it follows that the use of a hand tool would still be a manual

operation and come within the meaning of the terms at issue.

Bestop's proposed definition includes the negative limitation that

excludes the use of any tool. As noted by Webasto, the Federal Circuit has

made it clear that negative limitations are improper absent "any express

disclaimer or independent lexicography in the written description" that

would justify adding the negative limitation. (*Omega Eng'g, Inc.v. Raytek*

*Corp.*, 334 F.3d 1314,1322-23 (Fed.Cir. 2003) (Slide 53). The intrinsic record in this case does not have any such disclaimer or independent lexicography. There is nothing in any of the intrinsic record to indicate that hand tools cannot or should not be used to unlock the structure.

Finally, further evidence that Bestop's proposed construction is baseless, is the fact that its construction is designed to place their products outside the scope of the '342 patent, rather than being based on the intrinsic record. (*See* Webasto Slide 54). The correct starting point for claim construction is always the intrinsic record, not the defendant's product. Bestop, unfortunately, favors the latter, not the former, and, as a result, it repeatedly proposes incorrect and unsupported definitions.

The Special Master agrees with Webasto position and recommends that the Court find that **no construction is required for claim term 5**.

### Terms 6 & 7: "Adjacent to" and "Secured at"

a.      Parties Positions

(i)   Webasto's Proposed Construction and
Arguments

**No construction required as to any of these terms. Terms
should be given ordinary and customary meaning.**

Webasto's arguments are summarized in their Responsive Brief,

included herein, and its hearing slides and oral argument:

[Paula: put pages 15,16 of Webasto's Responsive Br. here]

BesTop's construction of the term "fixation elements

being manually unlockable" is improper for two reasons.  First,

BesTop failed to identify the evidence it intended to rely on in

support of its construction, and thus, its arguments have been

waived.  Second, BesTop's construction impermissibly

attempts to limit the claims to a preferred embodiment, without

any express disclaimer of the claim scope available under the

ordinary and customary construction of the claim language.

BesTop relies on extrinsic evidence that it did not

identify in accordance with the parties' stipulated procedure for

claim construction.  *See Joint Statement* at 9 (ECF No. 30).

The only evidence identified by BesTop in support of its

constructions was the '342 Patent, column 4 lines 14-20 and 27-

32, as well as its own Accused Product. *BesTop's Amended Statement* at 4 (ECF No. 49-3); *see also Wilson*, 442 F.3d at 1330-31 (construing claims with reference to the accused device is improper). However, BesTop's Opening Claim Construction Brief relies on extrinsic definitions for both the term "Manually" and "Handle." *BesTop's Opening Br*. at 23. The Court should find that BesTop has waived its arguments by failing to timely raise them.

In addition, BesTop's construction of this claim term impermissibly reads multiple limitations into the claims from the specification. BesTop makes the same arguments it made previously with respect to disputed claim terms 3 and 4, which fail for the same reasons. *Supra* Part II.B. The fact that a patent includes detailed descriptions of the preferred embodiments of an invention does not convert those embodiments into limitations on the claims. *Thorner*, 669 F.3d at 1366. Any redefinition of a claim term or disavowal of claim scope requires "clear and unmistakable" language to overcome the "'heavy presumption' that claim terms carry their full

ordinary and customary meaning." *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095 (Fed. Cir. 2013).

The intrinsic evidence cited by BesTop ***describes a preferred embodiment***, but does not include any language purporting to redefine any terminology appearing in the claims. *BesTop's Opening Br.* at 22 (citing '342 Patent, col. 4 ll. 14-20, 27-32). BesTop cannot show that the patentee expressly intended the claims to incorporate the word "all," the term "handle screws" or any negative limitation regarding the use of a tool. *See id.* Absent such a clear statement by the patentee, the claims are entitled to the full scope of their ordinary and customary meaning.

(*Webasto's Responsive Br.*, pages 15,16. *See also*, Hearing Slides 55-58; Transcript pages 61-63).

(ii)   Bestop's Proposed Construction and Arguments

**"Adjacent to" and "secured at" must be combined to mean "attached to the front edge of the roof"**

Finally, the parties dispute the terms "adjacent to" and "secured at" in dependent Claim 5.  As explained in Bestop's opening brief, the parties propose the following constructions:

| **Bestop's Proposed Construction** | **Webasto's Proposed Construction** |
| --- | --- |
| "Adjacent to" and "secured at" must be combined to mean "attached to the front edge of the roof." | Ordinary and customary meaning; no construction required. |

Again, Webasto has specifically defined "adjacent to" and "secured at," in combination, to mean "attached to the front edge of the roof."  In the detailed description of the preferred embodiment, Webasto explained:

> The free legs **60** of the main tensioning bow **58**, at their ends facing away from the hinge points **62**, are connected to each other via a transverse leg, which, in the closed position being illustrated in FIGS. **2**, **5** and **9**, forms a front edge of the roof opening mechanism **28**, said edge being adjacent to the front apron **16** of the vehicle structure **10**. The transverse leg **64** constitutes a front bow of the roof opening mechanism **28**.

*Id*. at col. 5, lines 18-24.  The drawings also confirm that "adjacent to" and "secured at" mean the tensioning bow is "attached to the front edge of the roof":



*Id*. at Fig. 2.  Webasto's own definitions in the '342 Patent must

control.

(*Bestop's Responsive Br*. pages 20,21; Hearing slides 31-35; Transcript
pages 63,64)

    b.    Special Masters Analysis and Recommendations

    The terms at issue are found in dependent claim 5 of the '342 patent.

Webasto correctly argues that these are not technical jargon, but have

commonly understood meanings. Again, nothing in the intrinsic record

indicates otherwise. That being the case, no construction is needed.

    Bestop's suggestion that the terms should be combined to mean

"attached to the front edge of the roof" is without merit. This is yet another

baseless attempt to rewrite the claims of the patent to combine the terms into

a totally new limitation. The Federal Circuit has a long-standing rule against

this practice. (*See, K-2 Corp. v. Salomon S.A.*, 191 F.3d 1356,1364 (Fed.

Cir. 1999), *Tex. Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d

1165,1171 (Fed. Cir. 1993); Webasto Slide 58).

The Special Master recommends that the Court adopt Webasto's

position and find that **claim terms 6 and 7**, **"adjacent to"** and **"secured**

**at"**, need **no construction**.

### Term 8: "An Edge Region of a Roof Structure"

      a.      Parties Positions

           (i)      Webasto's Proposed Construction and
                     Arguments

**No construction required as to any of these terms. Terms should
be given ordinary and customary meaning.**

Webasto's arguments are summarized in their Responsive Brief,

included herein, and its hearing slides and oral argument:

BesTop's Opening Claim Construction Brief explains,

for the first time in this litigation, the basis for its contention the

term "an edge region of the roof structure" is indefinite.

BesTop was required to disclose its complete defenses under

Section 112 of the Patent Act in its non-infringement and

invalidity contentions. *See Joint Statement* at 8 (ECF No. 30);

*Webasto's Opening Br.* at 24 (ECF No. 49). BesTop identified no such defense. *See BesTop's Contentions* (ECF No. 49-3). Thus, BesTop's indefiniteness argument has been waived.

To the extent the Court decides to consider BesTop's Section 112 defense, its defense should be rejected because the claims are reasonably definite.

"[A] patent is invalid for indefiniteness [under Section 112] if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 134 S.Ct. 2120, 2128-29 (2014); 35 U.S.C. § 112(b).

The '342 Patent explains "an edge region of the roof structure" with reasonable certainty. The edge region of the roof structure limits the roof opening. '342 Patent, Abstract. The roof opening is identified in the specification and figures by reference number 14. *See id*. FIGS. 2-7. A person of ordinary skill in the art, having a clear understanding of what the patent considers the "roof opening" to be, would be capable of finding the edges of that opening with reasonable certainty.

The patent need not define its terms with mathematical precision. *Oakley, Inc. v. Sunglass Hut Intern.*, 316 F.3d 1331 (Fed. Cir. 2003). The degree of certainty the law requires is "not greater than is reasonable, having regard for the subject matter." *Nautilus*, 134 S. Ct. at 2129. Because a person of ordinary skill in the art would reasonably understand what the "edge region of the roof structure" is with reference to the claims, specification and figures, there is no material dispute that the claim language is sufficiently definite.

(*Webasto's Responsive Br.*, pages 18-20. *See also*, Hearing Slides 59-63; Transcript pages 64-69).

        (ii)    Bestop's Proposed Construction and Arguments

**Indefinite**

BesTop's arguments are summarized in their Responsive Brief, included herein, and its hearing slides and oral argument

Bestop indicates in its Noninfringement Contentions that "Bestop does not make, use or sell a vehicle roof with a roof opening." *See* **Ex. 7**, Bestop's Am. Resp. to Infringement Contentions, at p. 3; **Ex. 8**, Bestop's Resp. to Infringement

Contentions, at p. 3.  This language is specifically detailed as

required by Claim 1 and Claim 6, the two independent claims at

issue.  Bestop does not list the term as needing any construction

since Bestop does not have any product that encompasses such

claimed invention.

Webasto indicates this term as a "Disputed Claim Term

#8" in its Brief, and requests this Court to construe it as

"ordinary and customary meaning" when neither party

requested any construction prior to the filing of Webasto's

Brief.  Bestop has never indicated this term needed to be

construed and does not do so in response here, but leaves

Webasto to explain this make work activity to the Court.

(*Bestop's Responsive Br.* pages 21, 22; Hearing slides 35, 36; Transcript
pages 63, 64)

### b.      Special Masters Analysis and Recommendations

The terms at issue need no construction as the ordinary and customary

meanings are well understood from the intrinsic record. Bestop doesn't

contest anything about the meaning of the terms or offer a different

construction, but instead argues that the terms are indefinite.  Claim

construction is not the time to raise this defense, and, in the end, the parties

agree.  Webasto raised the point as a sort of "belt and suspenders" approach, but since it has been raised, there is no harm in the Court issuing the construction requested.

The Special Master's recommends that the Court find that **no construction** is required for the terms **"an edge region of a roof structure".**

## IV.   CONCLUSION

For all of the multiple reasons outlined above, the Special Master recommends that the Court find that **no construction** is required for any of the limitations of the '342 patent and that all terms be given their ordinary and customary meaning.

Respectfully submitted,

November 29, 2018.


Gaynell C. Methvin
Special Master