UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEBASTO THERMO & COMFORT
NORTH AMERICA, INC. and
WEBASTO-EDSCHA CABRIO USA, INC.,

          Plaintiffs/Counter-Defendants,        Case No. 16-cv-13456

                                             Paul D. Borman
v.                                       United States District Judge

BESTOP, INC.,                           R. Steven Whalen
                                        United States Magistrate Judge

          Defendant/Counter-Plaintiff.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT TESTIMONY OF MARK A. ROBINSON (ECF NO. 168)

This action involves Plaintiffs Webasto Thermo & Comfort North America, Inc.

and Webasto-Edscha Cabrio USA, Inc.'s (collectively "Webasto") claim that

Defendant Bestop, Inc. ("BesTop") infringes Webasto's U.S. Patent No. 9,346,342

("the '342 Patent"), entitled "Vehicle Roof and Roof Opening Mechanism." Webasto

claims that BesTop's Accused Product, the Sunrider for Hardtop ("the Sunrider"),

infringes Webasto's '342 patent as embodied in Webasto's Black Forest ThrowBack

top ("ThrowBack"). BesTop responds that the Sunrider does not infringe and that the

claims of the '342 Patent were disclosed in prior art and are therefore unpatentable.

The Court has issued claim construction and summary judgment rulings and the parties have filed *Daubert*[1] and *in limine* motions.  Now before the Court is Webasto's Motion to Exclude the Expert Testimony of BesTop's Expert, Mark A. Robinson (ECF No. 168.) The matter has been fully briefed and the Court held a hearing on June 6, 2019.  For the reasons that follow, Webasto's motion is GRANTED IN PART AND DENIED PART.

## I.   BACKGROUND

The background facts of this litigation are set forth in multiple prior Orders of this Court and the reader's knowledge of those facts is presumed.  Particular facts, as specifically relevant to the issues in this motion, will be discussed where appropriate.

## II.   LEGAL STANDARD

"Admissibility of expert testimony is governed by Federal Rule of Evidence 702 and informed by the seminal case applying Rule 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)."  *In re Southeastern Milk Antitrust Litigation*, 739 F.3d 262, 267 (6th Cir. 2014).  Fed. R. Evid. 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[1] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"[T]he rules of evidence - especially Rule 702 - do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993). The trial court's "gatekeeping" task with respect to expert testimony applies not just to scientific evidence, as was at issue in *Daubert*, but to all types of specialized knowledge presented through an expert witness. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49 (1999). ""[T]he relevant reliability concern may focus upon personal knowledge or experience . . . [as] there are many different kinds of experts, and many different kinds of expertise." *Id*. at 150. The Court must analyze separately the proposed expert's qualification, reliability and helpfulness.

The Federal Circuit "appl[ies] regional circuit law to evidentiary issues." *VirnetX, Inc. v. Cisco Sys., Inc.*., 767 F.3d 1308, 1324 (Fed. Cir. 2014). "Whether proffered evidence should be admitted in a trial is a procedural issue not unique to

patent law, and therefore we review the district court's decision whether to admit expert testimony under the law of the regional circuit, here the Fifth Circuit." *Micro Chem., Inc. v. Lextron*, 317 F.3d 1387, 1390-91 (Fed Cir. 2003). The Sixth Circuit has noted that absolute certainty is not required of an expert but that sheer speculation, regardless of the qualifications of the speculator, lacks sufficient reliability:

> Rule 702, we recognize, does not require anything approaching absolute certainty. *See Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. And where one person sees speculation, we acknowledge, another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line.

*Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671-72 (6th Cir. 2010).

To determine the testimony's reliability, the court does not "determine whether [the opinion] is correct, but rather [determines] whether it rests upon a reliable foundation, as opposed to, say, unsupported speculation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008). "As gatekeeper, the trial court only determines the admissibility of expert evidence; the jury determines its weight. The court's focus is 'solely on principles and methodology, not on the conclusions that they generate.'" *United States v. Stafford*, 721 F.3d 380, 393-94 (6th Cir. 2013) (quoting *Daubert*, 509 U.S. at 595) (alterations in original). "[R]ejection of expert testimony is the exception, rather than the rule." *In re Scrap Metal*, 527 F.3d at 530.

## III.  ANALYSIS

Webasto challenges Mr. Robinson's expert opinion on two very limited points – Webasto argues that Mr. Robinson improperly considers the Accused Product (the Sunrider and related patents) as a non-infringing alternative and improperly opines on a "design-around" that is theoretical and speculative and was never disclosed in discovery as an acceptable non-infringing alternative. Webasto argues that these opinions must be excluded.

BesTop retained Mark A. Robinson as a damages expert to rebut Webasto's damages expert, Mr. Milani.  Webasto's principal attack is on Mr. Robinson's opinions regarding the availability of non-infringing alternatives during the claimed period of infringement.  The patent holder bears the burden of establishing that there were no non-infringing alternatives available on the market during the period of infringement.  *Grain Processing Corp. v. American Maize Products, Co*., 185 F.3d 1341, 1353 (1999).  "When an alleged alternative is not on the market during the [period of infringement], a trial court may reasonably infer that it was not available as a noninfringing substitute at that time."  *Id*.  The Federal Circuit explained that this inference can be overcome by the alleged infringer only with clear proof of the availability of a substitute product during the period of infringement:

> The accused infringer then has the burden to overcome this inference by showing that the substitute was available during the accounting period.

> Mere speculation or conclusory assertions will not suffice to overcome the inference. After all, the infringer chose to produce the infringing, rather than noninfringing, product. Thus, the trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement. Acceptable substitutes that the infringer proves were available during the accounting period can preclude or limit lost profits; substitutes only theoretically possible will not.

185 F.3d at 1353.  In *Grain Processing*, the Federal Circuit found that the alleged infringer carried this burden with evidence that it "had the necessary chemical materials, the equipment, the know-how and experience, and the economic incentive to produce [an acceptable substitute] throughout the entire accounting period." *Id*. at 1354.

In *Fiskars, Inc. v. Hunt Mfg. Co*., 279 F.3d 1378 (Fed. Cir. 2002), the Federal Circuit discussed the quantum and nature of proof required to establish that an alleged non-infringing alternative that was actually not on the market at the time of the alleged infringement was still an acceptable non-infringing alternative:

> [A] product or process may qualify as an acceptable non-infringing substitute for purposes of defeating a lost profits claim although it was not "on the market" or "for sale" during the period of infringement. *[Grain Processing Corp. v. American Maize-Products Co.,*] 185 F.3d [1341]at 1349 [(Fed. Cir. 1999)], 51 USPQ2d at 1562. In such a case, the accused infringer has the burden of showing that the alleged alternative was available during that period. *Id*. at 1353, 185 F.3d 1341, 51 USPQ2d at 1565. The defendant in *Grain Processing* supported its claim that its non-infringing process was available during the period of infringement with specific facts showing it had "the necessary equipment, know-how, and experience" during the period of infringement to implement the

non-infringing process. *Id*. at 1354, 185 F.3d 1341, 51 USPQ2d at 1565. The accused infringer was also able to demonstrate that its non-infringing process created a product acceptable to consumers, at least in part because it had obtained market data after converting to the non-infringing process prior to the damages portion of the trial. *Id*. at 1355, 185 F.3d 1341, 51 USPQ2d at 1566.

279 F.3d at 1382.

In *Micro Chemical, Inc. v. Lextron, Inc.*, the Federal Circuit reaffirmed that *Grain Processing* opened the door to allowing an alleged infringer to demonstrate the availability of a noninfringing alternative even in the absence of actual product on the market at the time of the infringement:

In *Grain Processing*, this court reaffirmed its earlier precedent stating that a technology not on the market at the time of infringement can, in certain circumstances, constitute an available, noninfringing alternative. *Id*. at 1351–52. *Grain Processing* did not erect a rigid test for determining availability. Rather, it provided guidelines for when an alternative not actually "on sale" during the infringement period may have been readily "available" and thus part of the economic calculation of lost profits.

In *Grain Processing*, for example, the material and know-how for the alleged substitute were readily available at the time of infringement. *Id*. at 1354. According to the record in that case, the infringer "had all of the necessary equipment, know-how, and experience" to make the substitution at that time. *Id*. Therefore, the infringer was able to convert to the substitute manufacturing process in the remarkably short period of two weeks. *Id*. at 1346. In *Grain Processing*, even the ready availability of material and know-how alone did not make the substitute process "available" for the lost profits calculus. This court also weighed the fact that "the high cost of a necessary material can conceivably render a substitute 'unavailable.'" *Id*. Similarly, this court noted that the finding that an infringer had to design or invent around the patented technology

to develop an alleged substitute weighs against a finding of availability. *Id*. In sum, this court in *Grain Processing* weighed the factors that would show the substitute's effect on the market.

318 F.3d 1119, 1122-23.

Neither party disputes these general principles. The central dispute here is whether Mr. Robinson's opinion that BesTop had an available non-infringing alternative design that was never produced or marketed or sold, which is based entirely on his discussions with David A. Smith, BesTop's Director of Engineering, is admissible under *Daubert*. To begin with, there is significant ongoing confusion regarding whether or not BesTop is alleging that the Accused Product (the Sunrider which David Smith testified *is* BesTop's '888 Patent) is a non-infringing alternative product. Of course infringement and validity are presumed in a patent damages analysis and it *should be* axiomatic that an infringing product by definition cannot be a non-infringing alternative. The law clearly states and presumes that this is so. But BesTop appears to indirectly challenge this premise by continuing to assert through Mr. Robinson's Report its non-infringement and invalidity positions that it "invented and publicly disclosed" the Surnider before Webasto filed for the '342 Patent. Thus, BesTop argues, the Sunrider was "on the market and available" throughout the period of infringement and thus was an available non-infringing alternative. But of course when discussing the issue of damages, BesTop cannot argue non-infringement or

invalidity because both must be assumed for purposes of the damage calculations. And indeed this Court has found infringement in this case, having granted Webasto's motion for a summary judgment finding of infringement. (ECF No. 230, Opinion and Order Granting Plaintiffs' Motion for Summary Judgment of Infringement.) In any event, for purposes of calculating damages, a damages expert must assume that the patent in suit is valid and infringed. Indeed Mr. Robinson observes this premise in his Report, assuming for purposes of his analysis "that the Asserted Patent is valid and that at least one claim of the Asserted Patent will be found to have been infringed by BesTop." (ECF No. 164, Sealed Report of Mark A. Robinson 13, PgID 4275.) And more directly, Mr. Robinson conceded in his deposition that if the BesTop Sunrider is an infringing product, it cannot be a non-infringing substitute:

> Q: If the BesTop Sunrider is an infringing product, can it be an acceptable non-infringing substitute.
>
> A: No.

(ECF No. 172, Sealed Dec. 21, 2018 Deposition of Mark A. Robinson, 116, PgID 5249.) Despite acknowledging this premise, Mr. Robinson continues to suggest throughout his Report that the Sunrider represents an acceptable non-infringing alternative, specifically identifying in his Report the '888 patent (the Sunrider) as an available non-infringing alternative. (Robinson Report 19 ¶ 58(b), PgID 4281.) Mr. Robinson opines that because BesTop developed and commercially launched the

Sunrider prior to the issuance of the '342 Patent, the technology of the '888 Patent was available during the entire economic damages period at issue. (*Id*. at 22 ¶ 58(c), PgID 4284.) BesTop argues that Mr. Robinson is not relying on the Sunrider as a non-infringing alternative but only using it as an example of the technology available to design a non-infringing alternative – but of course this is a distinction without a difference in this context.

To be very clear: the Sunrider, the '888 patent and any of its related patents that allegedly depict the same technology ARE NOT ACCEPTABLE EVIDENCE OF NON-INFRINGING ALTERNATIVES and will not be discussed as such in this case. It is unfortunate that the Court even has to emphasize such an obvious point of law in a patent case with seasoned litigators. But it is perhaps unsurprising here in view of the fact that BesTop continues to insist that this case "is unusual because the accused infringing product is also prior art to the Webasto patent." (ECF No. 223, Transcript of June 6, 2019 Hearing on Webasto's Motion to Exclude the Testimony of BesTop's Expert, Mark A. Robinson 22:10-12.) As this Court has had to reiterate multiple times in these proceedings, no finding has been made, or can even be argued now, that the Accused Product in this case is prior art to the Webasto patent. That ship has long since sailed and BesTop has no one to blame but itself for any fallout from that determination, as explained by this Court in multiple prior Opinions and Orders in this

case.

As to Mr. Robinson's "opinion" as to an alleged non-infringing design-around, this opinion is wholly inadmissible under *Daubert*. Mr. Robinson's Report and his testimony in his deposition demonstrate without question that his entire opinion on the alleged non-infringing design around is 100% a regurgitation of what he was told in conversation by David Smith, BesTop's Director of Engineering and a lay witness in this case. To the extent that Mr. Robinson cites to any authority for his design-around opinion, he cites only to his conversations with Mr. Smith. And in fact as to the critical factor of whether the non-infringing alternative provides all the same alleged benefits associated with the '342 and would therefore be an "acceptable" alternative – which is the single most important factor in this case where the alleged non-infringing alternative was in fact never produced or sold – Mr. Robinson provides NO citation to any authority for reaching this opinion. (Robinson Report 24, ¶59(e) (providing no footnoted authority for this proposition). Mr. Robinson testified in his deposition that this was some kind of oversight and he is sure that he also received this information, and indeed all of the information in paragraph 59 of his Report, from Mr. Smith, but forgot to add the footnote for this proposition. (Robinson Dep. 151, PgID 5258). This only highlights the lack of knowledge and/or care with which Mr. Robinson proffers his "opinion" that there was a non-infringing alternative design that

BesTop could easily have created rather than choosing the path of infringement. Mr. Robinson testified that he never conducted a survey of what particular benefits consumers were looking for when purchasing a convertible jeep top nor was he aware of any such survey that compared the benefits and acceptability of this alleged design-around to the benefits associated with the '342 and in fact he had no independent expertise whatsoever in determining any of the factors relevant to determining whether a proposed design around would be non-infringing and acceptable and he did not know if Mr. Smith had conducted any such studies. (Robinson Dep. 1-7, 54-55, 57-60, 61-62, 92-93, 142-152, PgID 5224, 5234, 5235, 5235, 5243, 5255-5258.)

It is demonstrably clear that Mr. Robinson is nothing but a mouthpiece for Mr. Smith as to the availability of a non-infringing alternative design around – indeed Mr. Robinson testified that he relied completely on Mr. Smith as the basis for this opinion and that Mr. Smith "would be considered the expert in the area." (Robinson Dep. 144:19-145:3. PgID 5256.) But critically, Mr. Smith has not been proffered as an expert in this case. While Mr. Robinson is permitted to rely on foundational factual testimony from percipient witnesses assuming that those witnesses will be available to testify at trial to their personal knowledge of those foundational facts, *see,e.g., Oracle Am., Inc. v. Google Inc*., No. 10-cv-03561, 2011 WL 5914033, at *1 (N.D. Cal. Nov. 28, 2011)*, it is obvious from Mr. Robinson's Report that he relied on Mr.

Smith for far more than Mr. Smith's percipient factual knowledge based on Mr. Smith's firsthand experiences. Mr. Smith is not an expert an in this case, will not be permitted to render any expert opinions, and will be limited to any lay opinion testimony only as permitted under Fed. R. Evid. 701.

Federal Rule of Evidence 602 provides that a lay witness may testify only to matters of which they have personal knowledge and Fed. R. Evid. 701 limits any opinion testimony proffered by a lay witness to an opinion that is "(a) rationally based on the witness's perception," and is "(b) helpful to clearly understanding the witness's testimony or determining a fact in issue," and "(c) *not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702." (Fed. R. Evid. 702.) (Emphasis added.) It is well understood that "when inventors of one patent compare their invention to a second patent of which they have no personal knowledge, 'they provide testimony that does require specialized knowledge.'" *Wright's Well Control Services, LLC v. Oceaneering Int'l, Inc.*, No. 15-1720, 2018 WL 3439660, at *5 (E.D. LA May 3, 2018) (quoting *Gart v. Logitech, Inc.*, 254 F. Supp. 2d 1119, 1123 (C.D. Cal. 2003)). *See also Air Turbine Technology, Inc. v. Atlas Copco AB*, 410 F.3d 701, 712, 714 (Fed. Cir. 2005) (finding that district court did not abuse its discretion in excluding testimony of co-inventor of the claimed invention under Fed. R. Evid. 701 regarding the structure and workings of the accused device because such testimony

was not based on his personal knowledge and required the application of "special scientific knowledge" falling outside the bounds of Rule 701); *Freedom Wireless, Inc. v. Boston Communications Group, Inc.*, 369 F. Supp. 2d 155, 157-58 (D. Mass. 2005) (observing that "any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements," and finding that a lay witness's "abstract opinion" on obviousness, "which is several degrees removed from [his] actual experience, is the classic type of expert testimony contemplated by Rule 702," and concluding that the witness was not competent to testify to such matters); *Munchkin, Inc. v. Luv N' Care, Ltd*., No. 13-cv-07228, 2015 WL 774046, at *3 (C.D. Cal. Feb. 24, 2015) (excluding under Rule 701 the proffered lay opinion testimony of defendant's CEO, who was not disclosed as an expert, on any issue related to invalidity that involved comparing prior art to the patent at issue); *Innovatier, Inc. v. CardXX, Inc.*, No. 08-cv-00273, 2011 WL 4536970, at *2-4 (D. Colo. Sept. 29, 2011) (excluding several proffered opinions of a non-expert under Fed. R. Evid. 701 that required the witness to apply professional judgment outside of personal experience, observing that "[w]hile experts are allowed to give testimony outside of their personal experiences and observations, lay witnesses are not"); *Marine Polymer Technologies, Inc. v. Hemcon, Inc.*, 06-cv-100, 2009 WL 801826, at *4-7

(D.N.H. March 24, 2009) (excluding testimony of lay witness under Rule 701, observing that lay witness opinions "are based on the witness's personal experience, often derived from the witness's job," and that not all experience-based opinions are admissible under Rule 701 and will be excluded if they rely on the witnesses "scientific, technical, or other specialized knowledge" and noting "other district courts . . . [that] have not allowed lay witness opinion testimony on technical matters involving patent litigation").

The information allegedly conveyed to Mr. Robinson by Mr. Smith, which forms the sole foundation for Mr. Robinson's non-infringing alternative design opinion, goes far beyond the bounds of percipient lay witness testimony based on Mr. Smith's personal experiences and, as Mr. Robinson testified in his deposition, is based upon Mr. Smith's "expertise." Determining that the proposed design would be "non-infringing" at a minimum involves comparing the proposed design to the '342 and explaining to a jury how the proposed design would not infringe the '342, an endeavor which Mr. Robinson concedes he is unable to undertake based on his own independent knowledge or expertise, and manifestly goes well beyond Mr. Smith's percipient factual knowledge based on his actual experiences. Similarly, even assuming Mr. Smith has any knowledge of whether or not the alternative design around would have been an "acceptable" alternative, which is certainly not indicated in Mr. Robinson's

Report, any opinion that the proposed design would provide all the same benefits of the '342 and would be an acceptable alternative to consumers would involve explaining to a jury what consumers valued in the '342 and why and how the alleged proposed alternative design-around satisfied those customer preferences and demands – also manifestly beyond the scope of Mr. Smith's percipient factual knowledge and personal experiences. Even assuming that Mr. Smith could fill in these crucial foundational blanks at trial, he would be unable to do so because he can only testify in the form of a lay opinion.

Even putting aside the prejudicial fact that BesTop never identified this alleged non-infringing alternative design at any point in this case until Mr. Robinson's rebuttal Report (despite Webasto's interrogatories expressly requesting this information), it is clear that Mr. Robinson has absolutely no independent expertise or knowledge regarding the alleged alternative non-infringing design-around about which he opines and relies entirely on what he was told in conversation by Mr. Smith, who cannot offer any of the underlying opinions on the alternative non-infringing design around in this case due to his inability to render any expert opinions. This failing goes to the very foundation of Mr. Robinson's opinion on the alleged existence of a non-infringing alternative design given that Mr. Smith is the sole source of Mr. Robinson's non-infringing design opinion. No amount of cross-examination could

cure this fundamental lack of reliability.

The Federal Circuit has instructed that "the trial court must proceed with caution in assessing proof of the availability of substitutes not actually sold during the period of infringement," because "[a]fter all, the infringer chose to produce the infringing, rather than the noninfringing, product." *Grain Processing*, 185 F.3d at 1353. Here such caution demands that the Court exercise its gatekeeping function to keep Mr. Robinson's unreliable opinion from the jury. Accordingly, Mr. Robinson will be precluded from offering any opinions on an alleged non-infringing alternative design-around.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Robinson will be precluded from offering any testimony or opinions regarding, or referring to, the Sunrider, the '888 patent or any related patents or exhibits that depict the same infringing technology (or as BesTop asserts actually describe the Accused Product) as alleged non-infringing alternatives.

Mr. Robinson will also be precluded from offering any testimony or opinions regarding an alleged non-infringing alternative design-around. To the extent that Webasto seeks to further exclude Mr. Robinson's testimony and opinions beyond

these two discreet subjects, the Motion is DENIED, subject to valid evidentiary objections at trial.

IT IS SO ORDERED.

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 25, 2019